[No. 30933-5-II.   Division Two.   June 21, 2005.]

The State of Washington, *Respondent*, v. Donald Trent Stevenson, *Appellant*.

180

*David Schultz*, for appellant.
*Peter S. Banks*, *Prosecuting Attorney*, for respondent.

¶1 HOUGHTON, J. — After a bench trial, the trial court convicted Donald Stevenson of one count of voyeurism (domestic violence). On appeal, he challenges RCW 9A.44.115 as unconstitutionally vague and overbroad. Further, he claims that insufficient evidence supports his conviction. We affirm.

FACTS

¶2 T.S. is Stevenson's 22-year-old daughter. At the time of the incident, she lived in her father's home.

¶3 On June 8, 2003, T.S. wore only underwear as she sunbathed in the backyard of the home. Her father saw her sunbathing, so she quickly covered herself. Stevenson then went into the house.

¶4 The next day, as T.S. rushed to leave for work, she walked to the shower in a t-shirt. She spoke with her father on her way to the shower, telling him her plans for the day.

¶5 The bathroom had two doors, one leading to the kitchen and the other leading to a utility room. The door to the utility room had a window. Obscuring blinds covered the window on the utility room side of the door.

¶6 Hanging from a steel rod, a shower curtain covered most of the shower. But the too-small curtain left a gap.

¶7 T.S. undressed and got into the shower. After showering for about nine minutes, she reached for the soap and saw a hand on the blinds. The blinds parted and she saw

glare from eyeglasses. She recognized the eyeglasses as those of her father. Startled, she stepped into a portion of the shower where she could not be seen, but where she could look through the gap in the curtain. She watched until the hand disappeared, between 10 and 20 seconds later.

¶8 After she was certain that her father had left, she dried off, dressed, and called the police. She spoke with Sergeant Buettner, relating what had happened. Buettner advised T.S. to go to a friend's house. Buettner then went to the Stevenson home with Detective Robison.[1]

¶9 Stevenson invited the officers inside. Buettner advised Stevenson that he was not under arrest, but he warned Stevenson of his *Miranda*[2] rights.

¶10 Stevenson related the June 8 events to the officers. He stated that he walked into the backyard and was surprised to find T.S. sunbathing in a state of undress. Sexually aroused, he went into the house and into an office area. The office had a window from which he watched her sunbathe while he masturbated.

¶11 Stevenson also made a statement about the June 9 events. On the way to the shower, T.S. walked through the kitchen. Stevenson believed that she was not wearing a bra because he could see her breasts through the t-shirt. He became sexually aroused.

¶12 When T.S. went into the bathroom, he " 'felt drawn' " to the utility room where he could watch her shower. Report of Proceedings (RP) at 136. Buettner asked whether Stevenson intended to masturbate in the utility room.

---

[1] Buettner completed a report, describing the events of this interview. At trial, he testified to the contents of this report. Although the verbatim report of proceedings and Stevenson's Statement of Additional Grounds refer to the report, we do not have a copy on review.

[2] *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (holding that custodial statements are inadmissible unless officers warn the individual of the following: (1) he has the right to remain silent, (2) any statement may be used against him, (3) he has the right to an attorney, and (4) he may waive those rights).

Stevenson responded, " 'if I said I was back there for any other reason, I'd be lying.' " RP at 137-38.

¶13 Stevenson told Buettner that he looked between the blinds and the wall, trying to see T.S. in the shower. From this angle, he could only see her arm or shoulder.[3]

¶14 Stevenson also reenacted his actions for the officers, allowing them to photograph his reenactment. Stevenson stated that he then moved to the center of the blinds, separating them to see more of T.S.'s body. Once again, he reenacted his actions and allowed police to take pictures.

¶15 Stevenson explained that once he looked into the shower, he realized his actions were wrong. He then left the utility room.

¶16 After the oral statements and reenactments, Buettner asked Stevenson to complete a written statement. Stevenson complied.

¶17 The State charged Stevenson by information with one count of voyeurism (domestic violence).[4] Stevenson moved to dismiss the charge. He claimed that RCW 9A.44.115, as applied to his alleged conduct, was unconstitutionally vague and overbroad.

¶18 In a second motion to dismiss, Stevenson claimed that "the State's evidence, both direct and circumstantial, even construed in the light most favorable to the State, is insufficient as a matter of law to establish the essential

---

[3] On cross-examination of Buettner, defense counsel elicited information that Stevenson may have seen an elbow or shampoo bottle.

[4] The information charged Stevenson with voyeurism as follows:

Count I:

That he, DONALD TRENT STEVENSON, in the County of Skamania, State of Washington, on or about 6-9-03, for the purpose of arousing or gratifying the sexual desire of any person, did knowingly view, photograph, or film another person, to-wit: T.S. Stevenson, without that person's knowledge and consent while that person was in a place where he or she would have a reasonable expectation of privacy, to-wit: shower located in house at 322 [Glare] Road, Carson, Washington; contrary to RCW 9A.44.115(2) AND FURTHERMORE, the defendant did commit the above crime against a family or household member; contrary to RCW 10.99.020.

Clerk's Papers at 1.

elements of the crime charged." Clerk's Papers (CP) at 5. In written findings of fact and conclusions of law, the trial court denied both motions.

¶19 The trial court held a CrR 3.5[5] hearing to determine the admissibility of Stevenson's statements to police. In written findings and conclusions, the trial court found the statements admissible.

¶20 At a bench trial, only T.S. and Buettner testified for the State. After the State rested, defense counsel moved to dismiss the charge. The court denied the motion. Stevenson did not present witnesses on his own behalf.

¶21 The court found Stevenson guilty of one count of voyeurism. It also found that his crime involved domestic violence.

¶22 Stevenson appeals.

ANALYSIS

I. Vagueness

¶23 First, Stevenson argues that RCW 9A.44.115 's definition of "views" and "place where he or she would have a reasonable expectation of privacy" are vague, offending the due process clauses of the United States and Washington Constitutions. Appellant's Br. at 11, 17.

¶24 RCW 9A.44.115 provides, in relevant part:

(2) A person commits the crime of voyeurism if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly *views*, photographs, or films:

---

[5] In relevant part, CrR 3.5 provides:

(a) **Requirement for and Time of Hearing.** When a statement of the accused is to be offered in evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing, if not previously held, for the purpose of determining whether the statement is admissible. . . .

. . . .

(c) **Duty of Court to Make a Record.** After the hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusions as to whether the statement is admissible and the reasons therefor.

(a) Another person without that person's knowledge and consent while the person being viewed, photographed, or filmed is in *a place where he or she would have a reasonable expectation of privacy*; or

(b) The intimate areas of another person without that person's knowledge and consent and under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.

(Emphasis added.) Subsection (1) defines the pertinent terms:

(1) As used in this section:

. . . .

(c) *"Place where he or she would have a reasonable expectation of privacy"* means:

(i) A place where a reasonable person would believe that he or she could disrobe in privacy, without being concerned that his or her undressing was being photographed or filmed by another; or

(ii) A place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance;

. . . .

(e) *"Views"* means the intentional looking upon of another person for more than a brief period of time, in other than a casual or cursory manner, with the unaided eye or with a device designed or intended to improve visual acuity.

(Emphasis added.)

¶25 We review the constitutionality of a statute de novo. *State v. Eckblad*, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004). "A court will presume that a statute is constitutional and it will make every presumption in favor of constitutionality where the statute's purpose is to promote safety and welfare, and the statute bears a reasonable and substantial relationship to that purpose." *State v. Glas*, 147 Wn.2d 410, 422, 54 P.3d 147 (2002). The person asserting a vagueness challenge bears the heavy burden of proving the statute's unconstitutionality beyond a reasonable doubt. *City of Spokane v. Douglass*, 115 Wn.2d 171, 177, 795 P.2d 693

(1990). The presumption of constitutionality is overcome only in exceptional cases. *City of Seattle v. Eze*, 111 Wn.2d 22, 28, 759 P.2d 366 (1988).

¶26 A vague statute violates due process.[6] *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 739, 818 P.2d 1062 (1991). A statute is unconstitutionally vague if the statute does not (1) define the criminal offense with sufficient definiteness such that ordinary persons understand what conduct is proscribed or (2) provide ascertainable standards of guilt to protect against arbitrary enforcement. *Douglass*, 115 Wn.2d at 178. If the challenger proves, beyond a reasonable doubt, the lack of either requirement, the statute is void for vagueness. *Douglass*, 115 Wn.2d at 178.

¶27 Under the definiteness prong, a statute is void for vagueness if persons " 'of common intelligence must necessarily guess at its meaning and differ as to its application.' " *Haley*, 117 Wn.2d at 739 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)). When determining whether the statute provides fair warning of the proscribed conduct, we examine the context of the entire enactment, giving the language a "sensible, meaningful, and practical interpretation." *Douglass*, 115 Wn.2d at 180. But we do not require absolute specificity and agreement. *Douglass*, 115 Wn.2d at 179. "[A] statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." *Eze*, 111 Wn.2d at 27.

¶28 Under the arbitrary enforcement prong, the statute is unconstitutional if it "invites an inordinate amount of police discretion." *Douglass*, 115 Wn.2d at 181. As read in context, we determine whether the statute contains " 'inherently subjective terms.' " *Douglass*, 115 Wn.2d at 181 (quoting *State v. Maciolek*, 101 Wn.2d 259,

---

[6] The due process clause of the Fourteenth Amendment provides: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law." Washington's analogous clause states: "No person shall be deprived of life, liberty, or property, without due process of law." WASH. CONST. art. I, §3.

267, 676 P.2d 996 (1984)). To pass constitutional muster, the statute must provide adequate enforcement standards. *Douglass*, 115 Wn.2d at 181.

¶29 A vagueness challenge to an enactment that does not implicate First Amendment concerns is viewed in light of the particular facts of each case. *Eckblad*, 152 Wn.2d at 518. "A facial vagueness challenge to [a statute] is a challenge that the terms of the [statute] 'are so loose and obscure that they cannot be clearly applied in any context.'" *Douglass*, 115 Wn.2d at 182, n.7 (quoting *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1210 (5th Cir. 1982)). When evaluating a statute as applied, we test for "'unconstitutional vagueness by inspecting the actual conduct of the party who challenges the ordinance and not by examining hypothetical situations at the periphery of the [statute's] scope.'" *Weden v. San Juan County*, 135 Wn.2d 678, 708, 958 P.2d 273 (1998) (quoting *Douglass*, 115 Wn.2d at 182-83).

¶30 Given this background, Stevenson asserts both facial and as applied challenges.

## A. Facial Challenge

¶31 Stevenson claims he may present a facial challenge to RCW 9A.44.115 because it infringes on his freedom of thought. We disagree.

¶32 Stevenson cannot mount a facial challenge here because RCW 9A.44.115 does not punish thought, but instead regulates conduct.[7] Under the terms of the statute, a person is free to let his mind wander where it may. Only when an individual acts on these thoughts, and views

---

[7] Our Supreme Court examined RCW 9A.44.115 for vagueness in *Glas*, 147 Wn.2d at 421-23. Implicitly, the court conducted a facial analysis for the term "hostile intrusion." *Glas*, 147 Wn.2d at 422-23. But it did not identify the First Amendment right at issue, which is a generally necessary predicate when the statute is valid as applied. In *Glas*, the defendants engaged in "upskirt" photography in a public place, which the court determined was lawful under the statute. 147 Wn.2d at 412. As photography may be considered a medium of speech, we distinguish *Glas* on this basis.

another person for purposes of sexual arousal or gratification in a place where that person has a reasonable expectation of privacy, does the individual incur criminal liability.

## B. RCW 9A.44.115 As Applied to Stevenson's Conduct

¶33 Stevenson also claims that RCW 9A.44.115 is unconstitutionally vague as applied to his actions.

¶34 RCW 9A.44.115's definition of the term "views" is not vague as applied to Stevenson. As he admitted to Buettner, Stevenson first looked between the blinds and wall and then moved to the center of the blinds to see more of T.S.'s body. She showered for about nine minutes before she saw Stevenson's hands on the blinds. As applied to Stevenson's conduct, RCW 9A.44.115 meets both the definiteness and enforcement prongs.

¶35 Nor is the phrase "[p]lace where he or she would have a reasonable expectation of privacy" problematic. RCW 9A.44.115(1)(c). T.S. showered in her bathroom, where no one can dispute that she had a reasonable expectation of privacy. This phrase is sufficiently definite as applied to Stevenson's actions, and it does not invite inordinate amounts of discretion.

¶36 Because Stevenson does not prove, beyond a reasonable doubt, that RCW 9A.44.115 is unconstitutionally vague, his argument fails.

## II. Overbreadth

¶37 Next, Stevenson contends that RCW 9A.44.115 is overbroad, impacting a substantial amount of constitutionally-protected behavior.

¶38 Recently, our Supreme Court summarized the overbreadth doctrine as follows:

> "A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities. The First Amendment overbreadth doctrine may invalidate a law on its face only if the law is 'substantially overbroad.' In determining

overbreadth, 'a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.' Criminal statutes require particular scrutiny and may be facially invalid if they 'make unlawful a substantial amount of constitutionally protected conduct . . . even if they also have legitimate application.' "

*Glas*, 147 Wn.2d at 419 (quoting *City of Seattle v. Webster*, 115 Wn.2d 635, 641, 802 P.2d 1333 (1990), *cert. denied*, 500 U.S. 908 (1991)).

¶39 When an enactment regulates behavior, rather than pure speech, it will not be overturned unless the overbreadth is " 'both real and substantial in relation to the [statute's] plainly legitimate sweep.' " *Eze*, 111 Wn.2d at 31 (quoting *O'Day v. King County*, 109 Wn.2d 796, 804, 749 P.2d 142 (1988)). "[D]espite the obligation to construe the language of [a statute] to uphold its constitutionality, this court will not do so if it is 'unable to place a sufficiently limited construction upon the standardless sweep of [the] legislation.' " *Webster*, 115 Wn.2d at 641 (alteration in original) (quoting *Bellevue v. Miller*, 85 Wn.2d 539, 547, 536 P.2d 603 (1975)).

¶40 A third party may assert an overbreadth challenge when the statute at issue chills or burdens constitutionally protected conduct. *Glas*, 147 Wn.2d at 419. A statute is overbroad when it is unconstitutional as applied to a hypothetical context, even if constitutional as applied to the litigant. *City of Tacoma v. Luvene*, 118 Wn.2d 826, 840, 827 P.2d 1374 (1992). This is due to the importance of First Amendment rights. *Luvene*, 118 Wn.2d at 840.

¶41 Our Supreme Court recently addressed this issue in *Glas*, 147 Wn.2d at 418. The plurality held that former RCW 9A.44.115 (2002)[8] was not unconstitutionally overbroad. *Glas*, 147 Wn.2d at 421. Although the legislature later amended RCW 9A.44.115 by adding section

---

[8] The legislature significantly amended this statute in 2003, effective May 12, 2003. RCW 9A.44.115. Because Stevenson committed the crime on June 9, 2003, we refer to the amended statute.

$(2)(b)$,[9] the language at issue remains the same.[10] Stevenson's overbreadth argument, then, is foreclosed by the decision in *Glas*.

¶42 Accordingly, Stevenson's overbreadth argument fails.

## III. Sufficiency

¶43 Finally, Stevenson asserts that insufficient evidence supports his voyeurism conviction because the "evidence does not permit a rational trier of fact to conclude that [he] did anything more than attempt to commit the crime of voyeurism." Appellant's Br. at 27; *see also* Statement of Additional Grounds (SAG) at 3.[11]

¶44 In a criminal sufficiency claim, the defendant admits the truth of the State's evidence and all inferences that may be reasonably drawn from them. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We review evidence in the light most favorable to the State. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004).

---

[9] As noted above, RCW 9A.44.115 reads:

(2) A person commits the crime of voyeurism if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly views, photographs, or films:

. . . .

(b) The intimate areas of another person without that person's knowledge and consent and under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.

[10] The *Glas* court quoted the relevant language of former RCW 9A.44.115(2) as follows:

"A person commits the crime of voyeurism if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly views, photographs, or films another person, without that person's knowledge and consent, while the person being viewed, photographed, or filmed is in a place where he or she would have a reasonable expectation of privacy."

147 Wn.2d at 413-14 (emphasis omitted). Here, the language is identical.

[11] RAP 10.10. In his SAG, Stevenson appears to claim that insufficient evidence supports his conviction, arguing about Buettner's testimony. SAG at 5-6. The fact finder measures witness credibility, and we do not review credibility determinations on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶45 After a bench trial, we determine whether substantial evidence supports the trial court's findings of fact and, in turn, whether the findings support the conclusions of law. *Perry v. Costco Wholesale, Inc.*, 123 Wn. App. 783, 792, 98 P.3d 1264 (2004). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth. *State v. Solomon*, 114 Wn. App. 781, 789, 60 P.3d 1215 (2002), *review denied*, 149 Wn.2d 1025 (2003). We consider unchallenged findings of fact verities on appeal, and we review conclusions of law de novo. *Perry*, 123 Wn. App. at 792.

¶46 In a criminal matter, the State must prove every element of the crime charged. *State v. Teal*, 152 Wn.2d 333, 337, 96 P.3d 974 (2004).

¶47 To prove the crime of voyeurism, the State must establish that the defendant (1) for the purpose of arousing or gratifying the sexual desire of any person; (2) knowingly viewed, photographed, or filmed; (3) another person; (4) without that person's knowledge and consent; (5) while the person being viewed, photographed, or filmed; (6) was in a place where he or she would have a reasonable expectation of privacy; or (7) knowingly viewed, photographed, or filmed the intimate areas of another person; (8) without that person's knowledge and consent; (9) under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place. RCW 9A.44.115(2)(a) and (b).

¶48 Here, Stevenson challenges numerous findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On June 9, 2003 in Skamania County, the defendant, Donald T. Stevenson, saw his daughter, [T.S.], wearing a t-shirt. The defendant was able to view his daughter's breast through the t-shirt in a revealing and suggestive manner. Viewing his daughter[']s breast through the t-shirt sexually aroused the defendant.

. . . .

4. The defendant looked into the shower, and according to Mr. Stevenson he viewed a part of his daughter's arm or elbow. Unable to view his daughter well enough, the defendant moved to another part of the window where he could see more of the shower.

. . . .

6. [T.S.] was in the center area of the shower. This was an area of the shower that was able to be viewed from the defendant's location at the center of the window.

7. [T.S.] had been in the shower approximately nine minutes when she turned around and reached down to grab the soap. At which time, she became aware that the defendant was looking in through the blinds. A person facing the shower head would have their back to the window. [T.S.] observed the defendant's hand parting the blinds in the middle of the window, the glare off of the defendant's glasses and recognized the individual in the window as her father, the defendant.

. . . .

### CONCLUSIONS OF LAW

. . . .

2. The defendant intentionally viewed his daughter for more than a brief period of time. The defendant admitted to viewing his daughter's arm. The defendant admitted to peering into the window at two different places. The viewing was more than casual and cursory.

3. The defendant viewed his daughter while she was in the shower, which is a place a person would have a reasonable expectation of privacy. The window to the bathroom had blinds on it and the entry to the bathroom had a door.

4. The defendant's purpose of viewing his daughter was for arousing and gratifying his sexual desires. The defendant admitted to Sergeant Buettner that he went to the utility room for the purpose of masturbating while he watched his daughter shower.

5. The defendant committed the crime of voyeurism against a family or household member. The defendant is the father of [T.S.], the victim.

6. The elements of Voyeurism (Domestic Violence) have been proven beyond a reasonable doubt.

CP at 46-49.

¶49 Viewed in the light most favorable to the State, substantial evidence supports the findings of fact. Because Stevenson challenges the sufficiency of the evidence, he admits the truth of the State's evidence. *Salinas*, 119 Wn.2d at 201.

¶50 According to Buettner, Stevenson admitted that he became sexually aroused after T.S. walked through the kitchen in a t-shirt. Stevenson " 'felt drawn' " to the utility room, intending to masturbate while watching T.S. shower. He admitted that he saw her arm or shoulder when looking between the blinds and the wall. He then moved to the center of the blinds, which he separated to see more of her body. T.S. testified that she saw Stevenson's hands on the blinds for 10 and 20 seconds. Further, Stevenson reenacted these events, posing for photographs. At trial, T.S. testified that Stevenson acted without her consent. As such, substantial evidence supports the findings of fact. Additionally, the findings of fact support the conclusions of law.

¶51 Because substantial evidence shows that Stevenson knowingly viewed T.S. for purposes of sexual arousal and gratification, without her knowledge or consent, in a place where she had a reasonable expectation of privacy, sufficient evidence supports his voyeurism conviction.

¶52 Affirmed.

BRIDGEWATER and ARMSTRONG, JJ., concur.