## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46645-7-II |
| Respondent, | |
| v. | |
| SHANE NMI AHEARN, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. – Shane Nmi Ahearn appeals his bench trial convictions for unlawful possession of a controlled substance and driving under the influence (DUI). He challenges various findings of fact and conclusions of law from both the suppression hearing and the bench trial, and argues that (1) the trial court erred when it denied his motion to suppress because the trooper lacked probable cause, and (2) the evidence does not support his DUI conviction. We affirm.

FACTS

I. BACKGROUND[1]

On February 2, 2014, at about 3:15 AM, Washington State Patrol Trooper Kyle Dahl observed the vehicle Ahearn was driving swerving within its lane of travel, crossing the fog line, and then swerving into the adjacent lane. At one point, the vehicle crossed over the fog line and

---

[1] These facts are drawn from the trial court's findings of fact and conclusions of law related to the CrR 3.6 suppression motion and the trial court's CrR 6.1(d) findings of fact and conclusions of law related to the bench trial. To the extent Ahearn does not challenge these findings, they are verities on appeal. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). We address Ahearn's specific challenges to the findings below.

continued to drive for about 100 yards before returning to its lane. When the vehicle eventually exited the highway, it did not stop at the stop sign at the end of the exit ramp and then it turned left without signaling.

Trooper Dahl activated his emergency lights to pull Ahearn over. Ahearn continued to drive for about a quarter of a mile, passing several safe places to stop, before pulling over.

When Trooper Dahl told Ahearn to roll down his window, Ahearn "struggle[d] excessively with the window switches." Clerk's Papers (CP) at 124. Ahearn was "sweating profusely, to the extent [the trooper] was concerned for [Ahearn's] health and asked if [Ahearn] was alright." CP at 124. Ahearn told Trooper Dahl that he had just showered, but he did not say that was the reason he was sweaty.[2] Trooper Dahl did not notice anything external, such as it being hot inside the vehicle, which could have explained Ahearn's profuse sweating.

Once out of the vehicle, Ahearn "struggled to keep the driver's door from closing on him while trying to put his jacket on, and he struggled with the buttons on the jacket." CP at 125. Ahearn also stumbled, "on nothing apparent," as he walked toward the front of his vehicle. CP at 125, 162. Throughout their contact, Trooper Dahl noticed that Ahearn's speech "was fast and broken" and that "his eyes were watery and bloodshot." CP at 125, 162.

Ahearn consented to take field sobriety tests. Trooper Dahl administered a portable breath test, the horizontal gaze nystagmus (HGN) test, the walk and turn test, the one-leg stand test, and

---

[2] The trial court found these facts—that Ahearn told Trooper Dahl he had showered but did not say the shower was why he was sweating—when addressing the suppression motion; the trial court did not include these facts in its findings of fact related to the bench trial. Accordingly, we do not consider these facts in our sufficiency of the evidence analysis.

the Romberg balance test.[3] Ahearn's HGN test provided "zero clues," and a portable breath test sample he provided registered .000. CP at 125, 163.

The results of the walk and turn test were "questionable," but the test was administered on a grade, which did not comply with test standards. CP at 125, 163. Ahearn also performed poorly on the one-leg stand test and the Romberg balance test.[4] Throughout the tests, Ahearn exhibited "violent body tremors," he "swayed in a circular motion when standing still," and he "continued to sweat despite the cold." CP at 126, 162. He also "walked very fast during the [w]alk and [t]urn test." CP at 126, 162.

Trooper Dahl concluded that Ahearn's physical movements, tremors, swaying, rapid speech and walking, and profuse sweating suggested he was affected by a stimulant.[5] Trooper Dahl arrested Ahearn for suspicion of DUI.

After his arrest, Ahearn consented to a search of his vehicle. During the search, Trooper Dahl found a syringe containing a clear liquid, later identified as methamphetamine.

---

[3] We describe these tests in more detail below.

[4] Ahearn challenges the trial court's findings with regard to these tests; we discuss these findings in more detail below.

[5] Trooper Dahl testified to this at the suppression hearing, but he did not include this statement in his incident report, which was submitted as evidence at the bench trial. Accordingly, we consider this fact when evaluating the denial of the suppression motion, but not when evaluating the bench trial conviction.

II. PROCEDURE

A. SUPPRESSION MOTION

The State charged Ahearn with unlawful possession of a controlled substance (methamphetamine), and DUI. Ahearn moved to suppress all of the evidence obtained after the stop. He primarily argued that Trooper Dahl lacked probable cause to arrest him for the DUI. Trooper Dahl; Ahearn; and Thomas Missel, Ahearn's expert on DUI investigations, testified at the suppression hearing.

In addition to testifying about the facts above, Trooper Dahl testified that he administered the walk and turn test, the one-leg stand test, and the Romberg balance test. Trooper Dahl testified that the walk and turn test requires the subject to walk a straight line by placing one foot in front of the other heel-to-toe for nine steps, to turn around by keeping their front foot on an imaginary line and taking a series of small steps around the front foot with their back foot, and to return using the heel-to-toe method. Ahearn struggled to keep his balance when listening to the instructions, turned the wrong way at the turn, and failed to take heel-to-toe steps several times.

Trooper Dahl admitted that this test was designed to be conducted on level ground and that there was a noticeable grade where this test occurred. But he did not think the grade was sufficient to affect this test, and he commented that the grade had nothing to do with Ahearn's executing the turn incorrectly. Because this test was validated on level ground, however, Trooper Dahl took the grade into consideration when evaluating Ahearn's performance. He also stated that in his training he learned that he could still "consider" the test even if it was performed on a grade, but it would not be "weighted as heavily as if it was done on level ground." 1 Report of Proceeding (RP) (July

21, 2014) at 46. Trooper Dahl specifically testified that Ahearn "performed poorly" on this test. 1 RP (July 21, 2014) at 42.

Trooper Dahl next testified that the one-leg stand test requires the subject to stand on one-leg, to raise the other foot about six inches off of the ground, and to "count by one thousands until" the officer tells them to stop. 1 RP (July 21, 2014) at 46. Trooper Dahl testified that during this test, Ahearn swayed and he counted "one, two, three," rather than "one one-thousand, two one-thousand, three one-thousand," as he had been instructed to do. 1 RP (July 21, 2014) at 47. While the way the subject counts is not a "standardized clue" for this test, Trooper Dahl considered Ahearn's failure to count as instructed because it related to his ability to follow instructions. 1 RP (July 21, 2014) at 47-48.

Trooper Dahl testified that during the Romberg balance test, the subject is instructed to close his eyes and tilt his head back; to estimate thirty seconds "in [his] mind;" and to tilt his head forward, open his eyes, and say stop after 30 seconds. 1 RP (July 21, 2014) at 50-51. Trooper Dahl also stated that Ahearn's time estimation was "pretty close," at 34 seconds. 1 RP (July 21, 2014) at 51. But Trooper Dahl once again observed that Ahearn had trouble following the instructions because he started counting out loud and had to be reminded to count to himself.

Missel testified about the validity of the field sobriety tests for detecting alcohol use. He testified that to determine whether a subject has a blood alcohol level of over .08, there are a minimum number of clues for each test that the examiner must observe for each test: four out of six clues for the HGN test, two or more clues for the walk and turn test, and two or more clues for the one-leg-stand test. And he testified that validation of these tests by the National Highway

5

Traffic Safety Administration (NHTSA) would give users the "percentage of accuracy rate" of probability that a subject was impaired. 1 RP (July 21, 2014) at 120.

Throughout this testimony, Missel emphasized that the validation studies related to these tests were only accurate for tests performed following the NHTSA protocols. He also testified that a trooper would have the opportunity to make a lot of observations outside of the testing that might suggest impairment, even though those observations would not be supported by validation studies. In addition, he testified that there had never been any validation studies on whether the field sobriety tests Trooper Dahl administered were effective in detecting drug use.

As to the particular tests here, Missel testified that he was concerned that the walk and turn test had been administered on a slope of about 10 percent grade. He opined that the slope made the test results "invalid." 1 RP (July 21, 2014) at 112. But he also noted that, while the observations made during the test would lack the certainty of a properly performed test, the trooper could "still [make] observations." 1 RP (July 21, 2014) at 108, 120, 131.

Missel also testified that the Romberg balance test was used in the drug recognition program. The subject's time accuracy was one factor, but the tester would also watch for "body sway," tremors, and other factors. 1 RP (July 21, 2014) at 123. He testified that even an unvalidated test, such as the Romberg balance test, could provide additional "observations" that would be helpful. 1 RP (July 21, 2014) at 125.

Missel then testified that the slope would not affect the one-leg stand. He testified that Trooper Dahl did not, however, observe enough clues on the one-leg stand to show impairment because Ahearn's internal clock estimate "fell within the acceptable range of 25 to 35 seconds." 1 RP (July 21, 2014) at 131. He stated that for the officer to be able to say with 65 percent accuracy

6

that a subject was impaired, the subject would need to show two clues. Missel admitted that the trooper could consider the one observed clue in conjunction with other observations when determining if the subject was impaired.

Based on this testimony and the facts above, the trial court found that Trooper Dahl had probable cause to arrest Ahearn for DUI. The trial court denied the motion to suppress.

B. BENCH TRIAL ON STIPULATED FACTS

Following the suppression hearing, Ahearn waived his right to a jury trial and agreed to a bench trial based on the law enforcement reports and stipulated facts. Specifically, he stipulated that the crime lab had tested the contents of the syringe found in his vehicle and had determined that the syringe contained methamphetamine, and he "adopt[ed] the testimony of his expert witness, Thomas Missel, who testified in the CrR 3.6 hearing that standardized field sobriety tests are a valuable tool in drug related DUI investigations and provide observational information for law enforcement."[6] CP at 110.

In addition to the facts set out above, Trooper Dahl stated in his report that when he first contacted Ahearn, Ahearn stated that he had not been drinking alcohol and that he had not "taken any medication or any drug[s]." CP at 115. Trooper Dahl also wrote that when he administered the field sobriety tests he observed that (1) Ahearn's eyes were blood shot and watery, (2) Ahearn was having violent body tremors, (3) Ahearn was swaying in a circular motion, and (4) Ahearn continued to sweat even though it was colder outside of his car.

---

[6] For purposes of our analysis, we will presume that this allowed the trial court to consider Missel's testimony in its entirety.

Trooper Dahl's report also described Ahearn's performance on three field sobriety tests:

**Walk and Turn Test:**
While giving Ahearn the instructions[,] Ahearn started the test early twice. Ahearn also lost his balance and had to step offline to his right to catch his balance. Once Ahearn began the test[,] Ahearn missed heel to toe on steps five[,] six[,] and seven on his first nine steps. Ahearn the[n] made a quick turn in one motion to his right. On Ahearn's second nine steps[,] Ahearn missed heel to [t]oe on steps five, six, seven, eight, and nine. Ahearn also used his arms for balance during the test. Ahearn also took his steps at a faster than normal pace.

**One Leg Stand:**
For this test[,] Ahearn stood on his right leg and raised his left foot. During the test Ahearn swayed and had body tremors. Ahearn also did not count as he was instructed, Ahearn counted one, two three etc. instead of one-thousand and one, one-thousand and two etc.

**Romberg Balance:**
For the test Ahearn estimated 30 seconds in 34 actual seconds. Ahearn began counting out loud by thousands until I reminded him to count in his head. After Ahearn finished the test, I asked Ahearn how long he thought that was, Ahearn stated he thought it was about 30 seconds. I asked Ahearn how he counted, Ahearn stated he just counted and that he imagined a stopwatch in his head. I observed Ahearn to have violent body tremors, and sway in a circular motion.

CP at 116.

Trooper Dahl further stated that Ahearn continued to sweat while being transported. Ahearn refused to consent to a blood draw and none was taken.

The trial court filed written findings of fact and conclusions of law under CrR 6.1(d). These findings are consistent with the facts above.[7] Based on these facts, the trial court concluded that Ahearn was guilty of DUI because he operated a motor vehicle "while his ability to drive was impaired by a drug." CP at 163. The trial court also found Ahearn guilty of unlawful possession of a controlled substance.

---

[7] We address the specific CrR 6.1(d) findings that Ahearn challenges in more detail below.

Ahearn appeals the denial of his suppression motion and his bench trial conviction for DUI.

ANALYSIS

I. SUPPRESSION MOTION

Ahearn first argues that the trial court erred when it denied his suppression motion. He contends that Trooper Dahl lacked probable cause to arrest him.[8] We disagree.

A. LEGAL STANDARDS

"We review a trial court's denial of a CrR 3.6 suppression motion to determine whether substantial evidence supports the trial court's challenged findings of fact and, if so, whether the findings support the trial court's conclusions of law." *State v. Cole*, 122 Wn. App. 319, 322-23, 93 P.3d 209 (2004) (citing *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)). "We review conclusions of law, including mischaracterized 'findings,' de novo." *Cole*, 122 Wn. App. at 323.

B. CHALLENGES TO FINDINGS

1. CrR 3.6 Finding of Fact No. XVII

Ahearn assigns error to CrR 3.6 finding of fact no. XVII, which states:

> That Trooper Dahl testified the Defendant performed poorly on the three physical dexterity and divided attention tests. He testified that throughout the contact and during the [field sobriety tests] the Defendant had violent body tremors. He swayed in a circular motion when standing still. He walked very fast during the Walk and Turn test. He continued to sweat despite the cold and to speak in a fast, broken manner.

---

[8] Ahearn also argues that the syringe evidence should have been suppressed because it was fruit of the poisonous tree following the unlawful arrest. Because we hold that the arrest was based on probable cause, this argument fails.

CP at 125-26. Ahearn's arguments address only the first two sentences of this finding, accordingly, we address only those portions of this finding. RAP 10.3(a)(6); *State v. Goodman*, 150 Wn.2d 774, 782, 83 P.3d 410 (2004).

Ahearn first challenges the portion of CrR 3.6 finding no. XVII stating, "Trooper Dahl testified the Defendant performed poorly on the three physical dexterity and divided attention tests." CP at 125-126. Regardless of whether the trial court's finding that Ahearn "performed poorly" on the tests was supported by the record, it is ultimately irrelevant because, as discussed below, the trial court's conclusion that the State established probable cause is supported by other findings. Thus, we do not address this issue further.

Ahearn also argues that the trial court should not have considered Ahearn's "body tremors" as evidence of impairment because these "severe shiver[s]" could be contributed to the fact Ahearn had been sweating and was outside in the cold. Br. of Appellant at 15-16. To the extent this argument relates to CrR 3.6 finding of fact no. XVII, the trial court found that Trooper Dahl *testified* at the suppression motion hearing that throughout the contact and during the testing Ahearn had violent body tremors. This finding is amply supported by Trooper Dahl's testimony.

2. CrR 3.6 Finding of Fact No. IXX

Ahearn next assigns error to CrR 3.6 finding of fact no. IXX, which states:

> That Defendant's physical movements, violent body tremors, swaying, rapid speech and walking, profuse sweating, and other indicators did suggest the Defendant was affected by a stimulant.

CP at 126.

As noted above, Ahearn argues that the trial court should not have considered Ahearn's "body tremors" as evidence of impairment because these "severe shiver[s]" could be contributed

to the fact Ahearn had been sweating and was outside in the cold.  Br. of Appellant at 15-16.

Ahearn is correct that his sweating and the cold temperature could have contributed to his shivers

or tremors.  But Trooper Dahl testified that while the cold may have contributed to Ahearn's

shivering, based on his training and experience, he did not believe the cold caused the shivers

because of "the severity of them."  1 RP (July 21, 2014) at 92.  This testimony supports the trial

court's consideration of this factor as suggestive of Ahearn being affected by a stimulant.

Additionally, even if the cold had contributed to Ahearn's shivers or tremors, the trial court

considered several additional factors, such as Ahearn's balance problems, profuse sweating, fast

speech, and attention issues, that suggested Ahearn was affected by a stimulant and the absence of

this single factor would not affect this finding.[9]

C.  CHALLENGES TO CrR 3.6 CONCLUSIONS OF LAW

Ahearn next challenges the trial court's CrR 3.6 legal conclusion that the State established

probable cause.[10]  Again, we disagree.

---

[9] Ahearn also appears to argue that Trooper Dahl did not contradict Ahearn's testimony that visibility was poor because of foggy conditions, suggesting that the trial court should have made a finding on this issue.  Because Ahearn does not assign error to finding of fact no. IV from the suppression hearing findings, which describes Ahearn's driving, we do not address this assertion. Furthermore, to the extent Ahearn is attempting to argue that his erratic driving was not enough to establish probable cause to suspect he was driving while impaired, it is still a factor we may consider when examining the totality of the circumstances.

[10] Ahearn assigns error to portions of findings of fact no. IXX and no. XXIV that relate to the trial court's probable cause finding.  Because the probable cause findings are in fact legal conclusions, we treat them as such on appeal.  *State v. Chamberlin*, 161 Wn.2d 30, 40-41, 162 P.2d 389 (2007); *Cole*, 122 Wn. App. at 323.  Ahearn also assigns error to conclusion of law no. III, which is the trial court's conclusion that Trooper Dahl had probable cause to arrest Ahearn for DUI.

Whether probable cause exists is a legal question we review de novo. *State v. Grande*, 164 Wn.2d 135, 140, 187 P.3d 248 (2008). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed." *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986). Probable cause requires more than "a bare suspicion of criminal activity." *Terrovona*, 105 Wn.2d at 643. But it does not require facts that would establish guilt beyond a reasonable doubt. *State v. Conner*, 58 Wn. App. 90, 98, 791 P.2d 261 (1990). The probable cause determination "rest[s] on the totality of facts and circumstances within the officer's knowledge at the time of the arrest." *State v. Fricks*, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979).

The facts show that before Trooper Dahl arrested Ahearn, Ahearn (1) was weaving in and out of his lane while driving, (2) failed to stop at a stop sign, (3) turned without signaling, (4) failed to pull over immediately when Trooper Dahl put on this emergency lights despite passing several areas where he could have safely stopped, (5) struggled "excessively" with the window controls when asked to roll down the vehicle's window,[11] (6) was sweating profusely for no apparent external reason, (7) struggled to keep the driver's side door from closing on him while attempting to put on a jacket, (8) struggled to button his jacket, (9) stumbled, apparently on nothing, when walking to the front of his car, (10) "exhibited "violent body tremors," "swayed in a circular motion

---

[11] CP at 124 (3.6 FF IX).

when standing still," and "walked very fast during the [w]alk and [t]urn test,"[12, 13] and (11) continued to sweat despite being outside in the cold. In addition, Ahearn's "speech throughout the contact was fast and broken and . . . his eyes were watery and bloodshot," and Trooper Dahl concluded that Ahearn's physical movements and behavior suggested he was affected by a stimulant. CP at 125.

While any one of these facts may not have given rise to probable cause, the totality of these circumstances demonstrated that Ahearn was having physical symptoms, such as balance problems, profuse sweating, tremors, and fast speech, as well as attention issues. These factors demonstrate that probable cause existed to believe Ahearn was driving under the influence.

Ahearn also asserts that many of the facts Trooper Dahl relied on could have been explained by it being 3:00 AM, Ahearn having been awake all night and not being appropriately dressed for the weather, and Ahearn being uncomfortable in the trooper's presence. While there could be alternative explanations for Ahearn's condition and reactions, the State was not required to prove beyond a reasonable doubt that Ahearn was impaired or that impairment was the only possible explanation in order to establish probable cause. *See Conner*, 58 Wn. App. at 98. And given the numerous factors described above that suggested some level of impairment, the trial court did not err when it concluded that the trooper had probable cause.

---

[12] CP at 126.

[13] While this test was not administered properly, Missel testified that Trooper Dahl could still make "observations" that would be relevant to whether Ahearn was driving under the influence. 1 RP (July 21, 2014) at 108, 120, 125, 131, 134-36.

Ahearn also argues that the State did not show that Trooper Dahl offered him the opportunity to undergo an evaluation by a drug recognition expert and that the State's failure to do this "must be construed in Mr. Ahearn's favor." Br. of Appellant at 17. In support of this argument, Ahearn cites *State v. Armenta*, 134 Wn.2d 1, 14, 948 P.2d 1280 (1997), which states only that if the trial court does not make a finding on a factual issue, we presume that the party with the burden of proof failed to sustain their burden on this issue. *Armenta* does not address whether Trooper Dahl was required to offer Ahearn the opportunity to seek an evaluation by a drug recognition expert before determining probable cause. Because Ahearn cites no authority supporting his argument, we do not consider it further. RAP 10.3(a)(6).

Because the factors described above demonstrate that probable cause existed to believe Ahearn was driving under the influence, we hold that the trial court did not err when it denied Ahearn's suppression motion.

## II. SUFFICIENCY

Ahearn next argues that the evidence is insufficient to support his DUI conviction.[14] Specifically, he argues that portions of the trial court's CrR 6.1(d) findings of fact no. VIII and no. IX are not supported by substantial evidence and that the trial court erred in concluding that the State had proved he had been driving under the influence of drugs. We disagree.

---

[14] We note that while some of the analysis in this section appears repetitive, we cannot just rely on the CrR 3.6 analysis because the trooper's testimony in the CrR 3.6 hearing was not stipulated to for the bench trial. Thus, the facts in this later section rely only on the trooper's written statements, which were not as in depth as the CrR 3.6 hearing testimony, and there are some subtle differences.

No. 46645-7-II

A. LEGAL STANDARDS

When challenging the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all inferences that may reasonably be drawn from them. *State v. Stevenson*, 128 Wn. App. 179, 192, 114 P.3d 699 (2005). When a defendant challenges the sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Following a bench trial, we review a trial court's decision to determine whether substantial evidence supports any challenged findings and whether the findings in turn support the conclusions of law. *Stevenson*, 128 Wn. App. at 193. "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." *Stevenson*, 128 Wn. App. at 193. Unchallenged findings of fact are verities on appeal, and we do not review the fact finder's credibility determinations. *Stevenson*, 128 Wn. App. at 192 n.11, 193. "Circumstantial evidence provides as reliable a basis for findings as direct evidence." *State v. Myers*, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997). And we review conclusions of law de novo. *Stevenson*, 128 Wn. App. at 193.

B. CRR 6.1(d) FINDING OF FACT NO. VIII

Finding of fact no. VIII states:

> That the Defendant performed Field Sobriety Tests (FSTs); the Gaze Nystagmus test, the Walk and Turn test, the One Leg Stand test, and the Romberg Balance [t]est. *That the defendant performed poorly on all three physical dexterity and divided attention tests.* That the Defendant had violent body tremors throughout the contact and during the FSTs. He swayed in a circular motion when standing still. He walked very fast during the Walk and Turn test. He continued to sweat despite the cold and to speak in a fast, broken manner. That the results of the

15

> Walk and Turn are questionable, as there was as slope to the ground, approximated at a 10% grade, which does not comport with the NHTSA standards. That the Defendant showed zero clues on the HGN test and provided a portable breath test sample of .000.

CP at 162-63. Ahearn argues that the evidence does not support the portion of this finding stating that he "'performed poorly' on the field sobriety tests." Suppl. Br. of Appellant at 2. Even presuming that the trial court's conclusion that Ahearn "performed poorly" on the field sobriety tests was incorrect, this error would be harmless because, as discussed below, the remaining findings support the trial court's conclusions of law.

C.  CRR 6.1(d) FINDING OF FACT NO. IX

> Finding of fact no. IX states:

>> That the Defendant's physical movements, observed while he was performing field sobriety tests, included violent body tremors, swaying, rapid speech and walking, profuse sweating, and other indicators that *suggest the Defendant was affected by a stimulant*.

CP at 163. Ahearn argues that the evidence does not support the trial court's conclusion that Ahearn's physical movements and other indicators "suggest[ed]" that he was affected by a "stimulant." Suppl. Br. of Appellant at 3.

Ahearn is correct that Trooper Dahl's report did not state that these factors suggested Ahearn was affected by a stimulant. Trooper Dahl stated only that these factors, plus his other observations during the stop, led him to believe that Ahearn was unsafe to drive. Thus, Ahearn is correct that this finding is not supported by the record. But this error is harmless because the remaining findings support the trial court's conclusions of law.

D.  CRR 6.1(d) CONCLUSION OF LAW NO. II

Conclusion of law no. II provides:

> That the Defendant is guilty of [DUI] because he operated a motor vehicle on public roadways in Kitsap County, Washington on February 2, 2014 *while his ability to drive was impaired by a drug*.

CP at 163 (emphasis added).  Ahearn argues that this conclusion of law is actually a finding of fact and that it is not supported by the stipulated evidence.

We disagree with Ahearn's assertion that this is a finding of fact.  Conclusion of law no. II is, instead, the trial court's conclusion that the State has proved the elements of the DUI.  Thus, we address this as the trial court labeled it, as a conclusion of law.

Ahearn argues that the evidence was not sufficient to support the verdict because it did not establish that he was under the influence of drugs or that he was impaired.  We disagree with Ahearn's argument and hold that the trial court's bench trial findings support this conclusion of law.

As to Ahearn's impairment, the unchallenged findings of fact established that he (1) was unable to maintain his lane of travel while on the highway, (2) ran a stop sign when he exited the highway, (3) failed to signal when he turned, (4) struggled with simple tasks such as unrolling his window and putting on his jacket, and (5) exhibited physical symptoms including excessive

sweating, body tremors, and lack of attention during the field sobriety tests. These facts support the conclusion that he was impaired.[15]

As to the cause of this impairment, the trial court's unchallenged bench trial findings mention no evidence suggesting that Ahearn was impaired by alcohol. But the unchallenged findings also show that the trooper found drugs in Ahearn's vehicle. Ahearn's obvious impairment coupled with the presence of drugs in the car provide sufficient circumstantial evidence that the impairment was caused by drug use.[16] Thus, the trial court's findings of fact support its conclusion that that the State had proved the DUI charge.

---

[15] Ahearn argues that his inability to maintain his lane of travel, his failure to stop, and his failure to signal were not enough to establish his driving was impaired because he was driving on empty roads at 3:00 AM. But these facts are not the only facts suggesting impairment.

[16] Ahearn argues that the evidence is insufficient because the trooper did not confirm the drug use with a blood test or examination by a drug recognition expert. But such direct evidence is not required. *See State v. Woolbright*, 57 Wn. App. 697, 701, 789 P.2d 815 (1990) ("[C]hemical tests are neither necessary nor required to prove intoxication.").

Ahearn also argues that the mere presence of a syringe containing methamphetamine and an empty syringe in the center console was not sufficient to establish that Ahearn used the drugs because he was homeless and could have just been storing the syringes in the car. This argument goes beyond the trial court's findings of fact, so we do not consider it further.

Ahearn also cites *State v. Gillenwater*, 96 Wn. App. 667, 980 P.2d 318 (1999), but this case is inapplicable here. At best, *Gillenwater* suggests that to establish guilt of DUI beyond a reasonable doubt, the State must present more than just evidence that the defendant had been drinking. *See* 96 Wn. App. at 671. But the *Gillenwater* court was dealing with a probable cause issue that involved the fact that no one had observed any erratic driving by the defendant, it was not addressing whether the presence of alcohol in the vehicle could establish a DUI without any direct evidence that the defendant had ingested it.

No. 46645-7-II

CONCLUSION

Ahearn fails to show that the trial court erred in denying his motion to suppress or that his bench trial conviction for DUI was improper. Accordingly, we affirm his convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

MELNICK, J.