# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50347-6-II |
| Respondent, | |
| v. | |
| RONALD LYNN COOK, SR. | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Ronald L. Cook, Sr. seeks reversal of his child molestation in the first degree conviction. Cook argues the trial court abused its discretion by admitting multiple child hearsay statements of AH, the child victim. He argues that the statements lacked reliability under the *Ryan*[1] factors because they were contradictory, unspontaneous, and involved assertions of past fact. We affirm.

## FACTS

A jury convicted Cook of child molestation in the first degree for abusing AH, a four year old.

AH's father and Cook were friends. On August 24, 2016, Cook volunteered to babysit AH. After her parents left, AH changed into one of her father's shirts. While AH laid on the couch watching a movie, Cook sat on the floor in front of AH and touched her vagina over her clothing. When AH's parents returned home, AH was laying on the couch watching a movie in her dad's shirt.

---

[1] *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984).

AH subsequently told people about the incident. The police interviewed Cook.[2] Cook changed his story multiple times. Eventually, Cook said he touched AH's vagina after he noticed her pants were wet when she came back from the bathroom. He told the detectives he touched her to check if she wet herself, and made a cupping motion with his hand. He said that, after she refused to take them off, he removed AH's underwear, and she changed into other underwear. The detectives arrested Cook.

I.      PRETRIAL CHILD HEARSAY HEARING

The trial court held a pretrial hearing to determine the admissibility of AH's hearsay statements. AH; Kristen Mendez, a forensic interviewer; Marie Duncan, a family friend; AH's father; Dr. Lisa Graham; and Lisa Stout, AH's foster mother, testified about the content and circumstances of AH's hearsay statements.

AH testified that Cook touched her vagina while she laid on the couch, wore her dad's shirt, and watched a movie. AH said Cook touched her vagina over her shirt and underwear. She also testified that she told her father, Mendez, and Graham[3] about Cook touching her. She said she told them everything about the touching that she had testified to that day.

Mendez testified about her videotaped interview of AH, which the trial court reviewed. The interview occurred approximately four weeks after the molestation. Mendez told AH she "heard that something happened to [AH] that was not okay." Report of Proceedings (RP) (Dec. 6, 2016; Dec. 15, 2016; & Feb. 14, 2017) at 33; RP (Dec. 13, 2016) at 120. AH responded that Cook

---

[2] After a CrR 3.5 hearing, the trial court ruled that Cook's statements during the interview were admissible.

[3] AH did not identify Mendez by name; she said she told "[a] girl" about the touching and described the interview room and her interview with Mendez. Report of Proceedings (RP) (Dec. 6, 2016; Dec. 15, 2016; & Feb. 14, 2017) at 65. Similarly, AH did not identify Graham by name; she said she told a doctor about the touching when Stout was present.

touched her vagina with his hand while they watched a movie at her house when her parents were gone. She said Cook was on the floor and she was lying on the couch in her dad's shirt. AH said Cook rubbed her vagina. She then demonstrated the motion. At first, AH told Mendez that she was not wearing underwear and that Cook touched her under her shirt. AH later said that Cook touched her over her underwear. AH said Cook stopped touching her when she went to the bathroom. Mendez testified that AH articulated her thoughts and could accurately relate information. Mendez also testified that, in the video, AH first told her she was not wearing underwear and, when Mendez later said that AH told her she was not wearing underwear, AH corrected her and said she was wearing underwear.

AH's father and Duncan testified about AH's sexualized play with dolls, and the subsequent questioning of AH by her father. On September 14, Marie Duncan, a friend of AH's parents, saw AH place her toys on each other and say, "Oh God, oh God, oh baby put it right there it feels good." RP (Dec. 6, 2016; Dec. 15, 2016; & Feb. 14, 2017) at 72. Duncan told AH's father, who questioned AH about the incident with Duncan present. AH related that she did not know where she learned to say those statements. AH's father asked AH if anyone had touched her privates. At first, AH said no, but the second time her father asked, AH said Cook touched her vagina. AH demonstrated the touching by making an upward wiping motion with her hand. AH went to the hospital where staff reported a possible sexual assault of AH to the police.

Graham and Stout testified about AH's physical examination by Graham, and AH's statements to Graham about her father's friend touching her vagina. Stout took AH to Graham. Stout related that AH was in foster care due to possible sexual abuse. Graham examined AH and observed that AH had an open hymen, an uncommon condition for a four year old. With Stout present, Graham asked AH if anyone had touched her privates. Graham wrote down AH's

response, noting that AH told her that AH's father's friend, "Juan," had touched her vagina "with his finger." RP (Dec. 6, 2016; Dec. 15, 2016; & Feb. 14, 2017) at 13. AH responded "[y]es" when asked if Cook inserted his finger in her vagina. RP (Dec. 6, 2016; Dec. 15, 2016; & Feb. 14, 2017) at 13. Three witnesses testified that AH had difficulty pronouncing the letter R. AH's lisp was the reason why Graham wrote down the name Juan, instead of Cook's real first name, Ron.

AH's parents and Stout also testified that AH was truthful.

The trial court applied the nine *Ryan* factors and concluded that AH's hearsay statements were reliable and admissible. The factors are:

> "(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; [ ] (5) the timing of the declaration and the relationship between the declarant and the witness"[;] . . . [(6)] the statement contains no express assertion about past fact[; (7)] cross-examination could not show the declarant's lack of knowledge[; (8)] the possibility of the declarant's faulty recollection is remote[;] and [(9)] the circumstances surrounding the statement . . . are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984) (citations omitted) (quoting *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982)).

The court made seven findings of fact:

1. The minor child was able to perceive and accurately relate information.
2. The statements made by the minor child were heard by six witnesses. [*Ryan* factor 3]
3. The minor child had no apparent motive to lie. [*Ryan* factor 1]
4. The statements were made over a period of approximately one month. [*Ryan* factor 5]
5. The surrounding circumstances did not suggest any misrepresentation of the defendant's involvement. [*Ryan* factor 9]
6. The consistency of statements made by the minor child to the various witnesses established sufficient indicia of reliability.
7. The timing, content, and circumstances of the statements provide sufficient indicia of reliability.

Clerk's Papers at 6.

Before entering the written findings, the trial court orally ruled that AH's family and friends thought AH was trustworthy (factor 2), and the statements were "made under circumstances where the answers were not forced on or suggested to the child" (factor 4). RP (Dec. 6, 2016; Dec. 15, 2016; & Feb. 14, 2017) at 111. The judge also ruled that, because AH was competent, any lack of knowledge could be established by cross-examination (factor 7), and the possibility of her recollection being faulty was remote (factor 8).

Based on these findings, the court concluded that the minor child was competent to testify and that all of her statements to the various witnesses were admissible.

## II.    TRIAL

The jury heard the evidence given above plus the following testimony.

AH testified about Cook touching her and about her hearsay statements to Mendez and her father. AH said that Cook touched her vagina with his hand while she laid on the couch and he sat on the ground in front of her. She explained that Cook touched her vagina over her shirt and underwear, between her legs. AH said she told her father about Cook touching her. She also testified that she told Mendez "the exactly same thing" she testified to that day. RP (Dec. 13, 2016) at 87. On cross-examination, AH again testified that Cook touched her vagina with his hand, over her dad's shirt, while she laid on the couch watching a movie and Cook sat on the ground in front of her. AH also testified on cross-examination that Cook's hand was not moving when he touched her.

Cook testified at trial and admitted he touched AH's underwear. He testified that AH was lying on the couch watching a movie and that he was sitting on the ground in front of the couch on the day in question. He said he "felt the front of [AH's] underwear with [his] fingers" because he thought she had wet herself. RP (Dec. 14, 2016) at 44. He described the touching as brushing

her underwear for a few seconds. However, he denied touching AH for sexual gratification. Cook also testified that he lied to the police when they questioned him.

The jury found Cook guilty of child molestation in the first degree.

Cook appeals.

ANALYSIS

Cook argues that the trial court abused its discretion in admitting AH's child hearsay statements because AH had a motive to lie and because the statements "contradicted each other," "were not spontaneous," and "involved assertions of past fact." Br. of Appellant at 9-10. Cook argues that these arguments go to *Ryan* factors 1, 4, 5, 6, 7, and 8. We disagree.

Cook argues that AH's inconsistencies put *Ryan* factors 7 and 8 into opposition to admissibility. The inconsistencies included AH telling people, "Cook touched her over her underwear, or that she had no underwear, or that he touched her over her underwear and over her shirt." Br. of Appellant at 9. Further, Cook says AH said "that Cook placed his hand on her, or that he rubbed, or that he inserted his finger into her vagina, or that he made a wiping motion with his hand." Br. of Appellant at 9. Cook also asserts AH sometimes mentioned going to the bathroom, but not always.

Cook argues that AH's statements were not spontaneous, which means *Ryan* factors 4 and 5 do not favor admissibility. He then argues that AH had a motive to lie, which put *Ryan* factor 1 in question. Lastly, Cook argues that *Ryan* factor 6 does not favor admissibility because AH's statements involved assertions of past fact.

I.     LEGAL PRINCIPLES

"RCW 9A.44.120 governs the admissibility of out-of-court statements made by putative child victims of sexual abuse." *State v. Brousseau*, 172 Wn.2d 331, 351, 259 P.3d 209 (2011). RCW 9A.44.120 provides that statements of a child under the age of ten describing acts of, or attempts at, "sexual contact performed with or on the child" are admissible in criminal proceedings, if the trial court concludes, after a hearing, "that the time, content, and circumstances of the statement provide sufficient indicia of reliability," and the child "[t]estifies at the proceedings."

We review a trial court's determination that child hearsay statements were reliable for an abuse of discretion. *State v. Borboa*, 157 Wn.2d 108, 121, 135 P.3d 469 (2006). "'A trial court abuses its discretion only when its decision is manifestly unreasonable or is based on untenable reasons or grounds.'" *Borboa*, 157 Wn.2d at 121 (quoting *State v. C.J.*, 148 Wn.2d 672, 686, 63 P.3d 765 (2003)). Trial courts are "necessarily vested with considerable discretion in evaluating the indicia of reliability" in a child victim's hearsay statements. *C.J.*, 148 Wn.2d at 686. "Appellate courts will carefully review the evidence and testimony presented in evaluating the exclusion and admission of child hearsay statements even under the abuse of discretion standard." *State v. Swan*, 114 Wn.2d 613, 667, 790 P.2d 610 (1990).

A trial court does not abuse its discretion where it follows the requirements of RCW 9A.44.120 and the *Ryan* factors in concluding that a child's hearsay statements are reliable. *See C.J.*, 148 Wn.2d at 686. "The abuse of discretion standard, as applied in child hearsay cases, . . . acknowledges the obvious, that the trial court is the only court that sees the children and listens to them and to the other witnesses . . . ." *Swan*, 114 Wn.2d at 667.

As stated above, there are nine *Ryan* factors. "No single *Ryan* factor is decisive and the reliability assessment is based on an overall evaluation of the factors." *State v. Kennealy*, 151 Wn. App. 861, 881, 214 P.3d 200 (2009).

II.      FINDINGS OF FACT AND CONCLUSIONS OF LAW

Cook does not assign error to any of the court's findings. Rather, Cook argues that at least four of the *Ryan* factors had not been met.

"A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number." RAP 10.3(g). Absent such an assignment, the findings are verities on appeal. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005).

Because Cook failed to assign error to the findings, to the extent that he argues the trial court's findings are not supported by substantial evidence, we do not consider those arguments. *See* RAP 10.3. They are verities on appeal. *Stevenson*, 128 Wn. App. at 193. "When findings are incomplete, [we] may look to the trial court's oral decision to interpret the judgment." *City of Lakewood v. Pierce County*, 144 Wn.2d 118, 127, 30 P.3d 446 (2001).

We then review whether the findings support the conclusions of law. *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). We review challenges to conclusions of law de novo. *Homan*, 181 Wn.2d at 106.

III.      *RYAN* FACTORS

As we previously stated, no one *Ryan* factor is dispositive. Here, Cook does not challenge that the second, third, or ninth *Ryan* factors were met and favor admissibility. Cook also does not challenge the finding that AH could "perceive and accurately relate information," and the

conclusion that AH was competent. CP at 6. Cook argues that *Ryan* factors 1 and 4 through 8 weigh against reliability and admissibility.

We have carefully reviewed the evidence and testimony as outlined above, and as applicable to each *Ryan* factor. Cook's argument on factor 1 is conclusory and not supported by authority. In addition, contrary to Cook's argument regarding factors 4 through 8, substantial evidence supported the trial court's findings on these factors, and the trial court's findings of fact supported its conclusions of law. Thus, we conclude that the court did not abuse its discretion in admitting the child hearsay statements and in determining that they were reliable and admissible.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Bjorgen, J.

Lee, A.C.J.