135 P.3d 469 (2006)
157 Wash.2d 108
STATE of Washington, Petitioner,
v.
Escolastico Casey BORBOA, Respondent.
No. 76547-2.
Supreme Court of Washington, En Banc.
Argued October 18, 2005.
Decided June 1, 2006.
*470 Scott Douglas Jackson, Clark County Prosecutor's Office, Vancouver, for Petitioner/Appellant.
David Schultz, Attorney at Law, Camas, for Appellee/Respondent.
Sheryl Gordon McCloud, Mark A. Larranaga, Walsh & Larranaga, Seattle, for Amicus Curiae Washington Association of Criminal Defense Lawyers.
FAIRHURST, J.
¶ 1 After a jury convicted Escolastico Casey Borboa of kidnapping in the first degree, assault of a child in the second degree, and rape of a child in the first degree, the sentencing court imposed a maximum sentence of life imprisonment as required by statute. The sentencing court also imposed an "exceptional minimum sentence," which is a sentence in excess of the standard range sentence for the crimes charged, based on two aggravating factors. Borboa challenges the constitutionality of his exceptional minimum sentence under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). He also challenges his underlying convictions, alleging that the trial court improperly admitted child hearsay evidence and that the prosecuting attorney committed misconduct warranting a new trial. We hold that Blakely does not apply to an exceptional minimum sentence imposed under RCW 9.94A.712 that does not exceed the maximum sentence imposed. We also hold that the *471 trial court's admission of the hearsay statements was not improper and that the prosecuting attorney did not commit misconduct warranting a new trial. Thus, we affirm Borboa's convictions and sentence and reverse the Court of Appeals in part.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 2 On August 16, 2002, Samuel Bernal Rivera and Maria Ramirez Valverdes visited Bagley Park in Vancouver, Washington, with their three children, including their two year old daughter, W.R. At about 9:00 p.m., Rivera and Valverdes realized they could not find W.R., who was last seen walking toward the parking lot. Rivera, Valverdes, and their friends searched for W.R., but when they could not find her they called the police and reported her missing.
¶ 3 About an hour later, W.R. appeared at the door of a house about three miles away from Bagley Park. W.R. was bleeding from her mouth and wearing no clothing. Police officers responded to the scene with Rivera, who identified W.R. The police took W.R. to Southwest Washington Medical Center, where emergency room physician Dr. Jeff McDonald examined W.R. and concluded that she "was struck forcefully on the right side of the face" by a "blunt object" consistent with a fist. 5B Report of Proceedings (RP) at 543. W.R. also saw Dr. John Stirling, a pediatrician specializing in child abuse cases. Dr. Stirling discovered an abrasion outside of W.R.'s hymen and inside of her labia. Based on his examination, Dr. Stirling concluded that "there was some penetration past the labia." 5BRP at 532.
¶ 4 Because neither W.R. nor her parents speak English, the hospital interpreter, Abigail Eden, was present with W.R. and her family at the hospital. At trial, Eden testified that W.R. made statements about the incident during her physical examination. W.R. stated that a man covered her eyes, hit her on the face, took her through some bushes, and put her in a car. Eden described W.R. as "just terrified" when she was at the hospital. 5BRP at 579. Eden also stated that W.R. "was clinging to her dad" and that "she had a really hard time letting people at first touch her or try to clean her up." Id. Eden testified that W.R. made her statements to her father, and that her statements were not in response to questions from authorities.
¶ 5 W.R.'s mother was also present when W.R. made statements at the hospital. Valverdes testified that W.R. stated that a stranger had covered her mouth, grabbed her by the hair, and hit her. W.R. also said that he removed her clothes and grabbed her private parts, using the word "poosha" for her vagina. 4RP at 189. Valverdes described W.R. as "affected emotionally" while she made the statements and testified that she was "crying and clinging on" and that "[s]he couldn't sleep." 4RP at 188. Valverdes also testified that W.R.'s behavior changed after the incident and that she became more "rebellious" and "angry," and that she had slapped one of her siblings. 4RP at 190, 192. Valverdes also testified that she observed W.R. simulating sexual intercourse with her dolls and then hit them and tell them that "children shouldn't cry." 4RP at 191-92.
¶ 6 Police officers investigating the incident located Borboa's vehicle about a block away from the home where W.R. was discovered. Inside the vehicle, officers found W.R.'s pants and panties. On a trail near the car, officers discovered several other items, including a broken pair of eyeglasses and a set of car keys for Borboa's vehicle. Further down the trail, officers located W.R.'s sweatshirt near droplets of her blood.
¶ 7 On the morning of August 17, 2002, a police officer arrested Borboa while he was walking near Bagley Park. After his arrest, Borboa admitted to detectives that the police had questioned him while he was sitting in his car in the area of Bagley Park at about 8:00 p.m. the previous evening, the evening of W.R.'s disappearance. Borboa told the detectives that after his encounter with the police, he had loaned his vehicle to an unknown woman who never returned it. He stated that he was looking for his vehicle at the time of his arrest. One of the detectives noted that Borboa had a scratch on his face and the palm of his hand that appeared *472 "fairly recent." 6BRP at 779. The police seized the white t-shirt Borboa was wearing at the time of his arrest. The crime lab determined that traces of blood on the shirt had the same DNA (deoxyribonucleic acid) characteristics as W.R.'s blood.
¶ 8 The prosecuting attorney charged Borboa with kidnapping in the first degree with a sexual motivation enhancement (count I), assault of a child in the second degree (count II), and rape of a child in the first degree (count III). The prosecuting attorney also alleged alternative charges of attempted rape of a child in the first degree, child molestation in the first degree, and attempted child molestation in the first degree.
¶ 9 Prior to trial, the court conducted a hearing to determine W.R.'s competency and the admissibility of W.R.'s out of court statements to Valverdes. Both the prosecuting attorney and Borboa's counsel agreed that W.R. lacked competency to testify at trial. After hearing Valverdes' testimony at the hearing, the trial court determined that W.R.'s out of court statements were reliable and admitted the statements pursuant to RCW 9A.44.120 and as excited utterances.
¶ 10 A jury convicted Borboa of count I, including the sexual motivation enhancement, as well as of counts II and III. For all three counts, the sentencing court imposed sentences under RCW 9.94A.712, which required the court to impose a maximum sentence of life imprisonment as well as a minimum sentence. The standard sentencing range for count I was 77 to 102 months, for count II was 57 to 75 months,[1] and for count III was 138 to 184 months. The court imposed exceptional minimum sentences of 600 months on all three counts, to run concurrently. In addition to the aggravating factor of sexual motivation for count I, which was found by the jury, the court found the aggravating factors of deliberate cruelty and particular vulnerability based in part on the extreme youth of the victim for all three counts.
¶ 11 Borboa appealed his convictions and his exceptional minimum sentence to Division Two of the Court of Appeals. In June 2004, while Borboa's appeal was pending, the United States Supreme Court decided Blakely and the parties submitted supplemental briefing to the Court of Appeals on the exceptional minimum sentence issue. The Court of Appeals upheld Borboa's exceptional minimum sentence on count I because a jury found the aggravating factor of sexual motivation. State v. Borboa, 124 Wash.App. 779, 791, 102 P.3d 183 (2004). However, the court held that the trial court found the additional two aggravating factors in violation of the sixth amendment to the United States Constitution and reversed the exceptional minimum sentences on counts II and III. Id. In the unpublished portion of its opinion, the court held that the trial court properly admitted W.R.'s hearsay statements and that the prosecuting attorney did not commit misconduct warranting a new trial. State v. Borboa, No. 30330-2-II, slip op. (unpublished portion) at 27, 32-33 (Wash. Dec. 7, 2004). As a result, the court affirmed Borboa's convictions and remanded for resentencing on counts II and III. Id. at 41.
¶ 12 Subsequent to Division Two's decision in Borboa, Division One of the Court of Appeals reached the opposite conclusion and held that judicial fact-finding to support an exceptional minimum sentence imposed under RCW 9.94A.712 does not violate the Sixth Amendment if the minimum term does not exceed the maximum term imposed. State v. Clarke, 124 Wash.App. 893, 902, 103 P.3d 262 (2004). We accepted review to determine the applicability of Blakely to exceptional minimum sentences imposed under RCW 9.94A.712 and to resolve the conflict between the divisions of the Court of Appeals. State v. Borboa, 154 Wash.2d 1020, 116 P.3d 398 (2005); RAP 13.4(b)(2). This court heard Borboa as a companion case to Clarke.

*473 II. ISSUES
A. Whether Blakely applies to an exceptional minimum sentence imposed under RCW 9.94A.712 that does not exceed the maximum sentence imposed.
B. Whether the trial court erred by admitting W.R.'s out of court statements under RCW 9A.44.120.
C. Whether the prosecuting attorney committed misconduct justifying a new trial.

III. ANALYSIS

A. Blakely does not apply to an exceptional minimum sentence imposed under RCW 9.94A.712 that does not exceed the maximum sentence imposed
¶ 13 Borboa argues that his exceptional minimum sentence violates the Sixth Amendment under Blakely. We recently addressed the precise issue Borboa raises in State v. Clarke, 156 Wash. 880, 890-93, 134 P.3d 188, 189, No. 76602-9, 2006 WL 1304915 (2006). In Clarke, we held that Blakely does not apply to an exceptional minimum sentence imposed under RCW 9.94A.712 when the minimum term does not exceed the maximum term imposed.
¶ 14 RCW 9.94A.712 applies to two of Borboa's three convictions: count I, kidnapping in the first degree with a finding of sexual motivation, and count III, rape of a child in the first degree.[2] Based on our analysis in Clarke, we uphold Borboa's exceptional minimum sentences on counts I and III because Blakely does not apply to these sentences.
¶ 15 With respect to count II, it appears from the record that the sentencing court also sentenced Borboa under RCW 9.94A.712. However, RCW 9.94A.712 does not apply to assault of a child in the second degree. Because RCW 9.94A.712 is not applicable, we consider whether Borboa's exceptional sentence for count II violates the Sixth Amendment under Blakely.
¶ 16 The Sixth Amendment guarantees a criminal defendant the right to "a speedy and public trial, by an impartial jury." U.S. CONST. amend. VI. In Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In other words, "the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, 542 U.S. at 303-04, 124 S.Ct. 2531.
¶ 17 A conviction for assault of a child in the second degree without a finding of sexual motivation does not require the imposition of a mandatory maximum sentence of life imprisonment. RCW 9A.36.130; RCW 9.94A.712. The sentencing court identified the standard sentence range for Borboa's assault conviction as 51 to 68 months. By contrast, the sentencing court imposed an exceptional sentence of 600 months based on its finding of the aggravating factors of deliberate cruelty and vulnerability based in part on extreme youth of the victim. Because these aggravating factors increased the penalty for the crime charged, they constitute fact-finding reserved for a jury under the Sixth Amendment. As a result, Borboa's exceptional sentence for count II violates the Sixth Amendment under Blakely. State v. Hughes, 154 Wash.2d 118, 137, 110 P.3d 192 (2005).
¶ 18 Thus, we uphold Borboa's exceptional sentences for counts I and III because *474 Blakely does not apply to those sentences. We also hold that Borboa's exceptional sentence for count II violates the Sixth Amendment under Blakely. Therefore, we remand for resentencing within the standard sentence range for count II but note that because Borboa's sentences run concurrently the resentencing likely will not affect the time served.

B. The trial court did not err by admitting W.R.'s statements under the child hearsay statute
¶ 19 Borboa argues that the trial court erred by admitting the out of court statements of W.R. because the evidence indicated she was not capable of receiving just impressions of events or relating them accurately. RCW 9A.44.120 authorizes the admission of hearsay statements made by a child under certain circumstances. It provides in relevant part:
A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, describing any attempted act of sexual contact with or on the child by another, or describing any act of physical abuse of the child by another that results in substantial bodily harm as defined by RCW 9A.04.110, not otherwise admissible by statute or court rule, is admissible in evidence in ... criminal proceedings . . . in the courts of the state of Washington if:
(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
RCW 9A.44.120.
¶ 20 This court has previously distinguished the test for the admissibility of statements under RCW 9A.44.120 from the test for competency to testify at trial. In State v. C.J., we held that the admissibility of statements under RCW 9A.44.120 "does not depend on whether the child is competent to take the witness stand, but on whether the comments and circumstances surrounding the statement indicate it is reliable." 148 Wash.2d 672, 685, 63 P.3d 765 (2003) (citing State v. Swan, 114 Wash.2d 613, 648, 790 P.2d 610 (1990)).
¶ 21 Borboa argues that the trial court and the Court of Appeals misread this court's decision in C.J. because C.J. "did not deal with the question of a child declarant's capacity to perceive and describe events accurately." Pet. for Review of Resp't at 15. However, it is Borboa's reading of C.J. that is in error. In C.J., the trial court determined that the child declarant was "unable to characterize the difference between truthful and false statements and unable to express a memory of the incident in words" and was therefore not competent to testify. 148 Wash.2d at 678, 63 P.3d 765. Similarly, in this case, both parties and the court agreed that W.R. was not competent because she did not "demonstrate the ability to answer questions." 2RP at 46. As in C.J., this determination was relevant only to W.R.'s ability to testify at trial and not the admissibility of her out of court statements. Therefore, we reaffirm our prior holding in C.J. that a child's competence to testify at trial is not relevant to the issue of whether her hearsay statements are admissible.
¶ 22 Therefore, we need only consider whether sufficient reliability existed in this case to admit W.R.'s statements under RCW 9A.44.120.[3] As we noted in C.J., "[t]he *475 trial court is necessarily vested with considerable discretion in evaluating the indicia of reliability, including whether the evidence demonstrates that a declarant was capable of receiving just impressions of facts and of relating them truthfully." 148 Wash.2d at 686, 63 P.3d 765 (citing Swan, 114 Wash.2d at 648, 790 P.2d 610). Thus, we review the trial court's decision to admit child hearsay evidence for an abuse of discretion. C.J., 148 Wash.2d at 686, 63 P.3d 765 (citing State v. Finch, 137 Wash.2d 792, 810, 975 P.2d 967 (1999)). A trial court abuses its discretion "only when its decision is manifestly unreasonable or is based on untenable reasons or grounds." C.J., 148 Wash.2d at 686, 63 P.3d 765 (citing State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997)).
¶ 23 In State v. Ryan, 103 Wash.2d 165, 175-76, 691 P.2d 197 (1984), this court adopted a set of factors applicable to determining the reliability of hearsay statements. They are:
"(1) [W]hether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness[;]" . . . [(6)] the statement contains no express assertion about past fact[;] [(7)] cross examination could not show the declarant's lack of knowledge[;] [(8)] the possibility of the declarant's faulty recollection is remote[;] and [(9)]the circumstances surrounding the statement (in that case spontaneous and against interest) are such that there is no reason to suppose the declarant misrepresented defendant's involvement.
Id. (quoting State v. Parris, 98 Wash.2d 140, 146, 654 P.2d 77 (1982); Dutton v. Evans, 400 U.S. 74, 88-89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970)).
¶ 24 Here, the trial court considered each of the Ryan factors in turn and determined that W.R.'s statements provided sufficient indicia of reliability for admission under RCW 9A.44.120 and were also excited utterances. In particular, the court noted that W.R.'s statements were spontaneous and were corroborated by several individuals, as well as by physical and circumstantial evidence. Additionally, we note that Borboa does not appeal the trial court's decision to admit W.R.'s statements as excited utterances, which provides a separate basis for their admissibility. As a result, we hold that the trial court did not abuse its discretion by admitting W.R.'s statements.

C. The prosecuting attorney did not commit misconduct justifying a new trial
¶ 25 Borboa argues that the prosecuting attorney committed misconduct during his questioning of witnesses and his closing statement that warrants a new trial. To prove prosecutorial misconduct, the defendant bears the burden of proving that the prosecuting attorney's conduct was both improper and prejudicial. State v. Brown, 132 Wash.2d 529, 561, 940 P.2d 546 (1997) (citing State v. Russell, 125 Wash.2d 24, 85, 882 P.2d 747 (1994)). In order to prove the conduct was prejudicial, the defendant must prove there is a substantial likelihood the misconduct affected the jury's verdict. In re Pers. Restraint of Pirtle, 136 Wash.2d 467, 481-82, 965 P.2d 593 (1998) (citing State v. Evans, 96 Wash.2d 1, 5, 633 P.2d 83 (1981)).
*476 ¶ 26 Borboa alleges that the prosecuting attorney committed misconduct in three ways. First, he argues that the prosecuting attorney's repeated questioning regarding the witnesses' emotional reaction to the events and his description of the charges as "horrible" in his closing statement constituted an improper appeal to the jury's passion and prejudice. Pet. for Review of Resp't at 16-17; 8RP at 1123. However, it may be proper argument for the prosecutor to reference the nature of the crime and the effect on the victims. "A prosecutor is not muted because the acts committed arouse natural indignation." State v. Fleetwood, 75 Wash.2d 80, 84, 448 P.2d 502 (1968). In this case, the crime was horrible, and the witnesses did react emotionally. Borboa has failed to meet his burden of proving that the prosecuting attorney's statements were improper or resulted in prejudice. Therefore, we hold that the prosecuting attorney's reference to the "horrible" nature of the crime and the effect on its victims was not misconduct.
¶ 27 Second, Borboa argues that the prosecuting attorney improperly impinged on the defendant's right to remain silent by repeatedly referring to the lack of defense evidence. In State v. Pavelich, 150 Wash. 411, 420, 273 P. 182 (1928), this court held that a prosecuting attorney may comment on a lack of defense evidence so long as the prosecuting attorney does not directly refer to the defendant's decision not to testify. Here, the prosecuting attorney never referenced the defendant's decision not to testify and only made passing reference to the lack of defense evidence. Thus, we hold that the prosecuting attorney did not commit misconduct by impinging on Borboa's right to remain silent.
¶ 28 Third, Borboa argues that the prosecuting attorney made an improper "golden rule" argument when he stated in closing argument, "Just think of if you wereon your face, just walking around, your face looks totally different now, that's a disfigurement of your face, and it's significant."[4] Pet. for Review of Resp't at 18-19; 8RP at 1054. Initially, we note that the defense attorney did not object to the prosecuting attorney's statement at trial. If the defendant does not object to alleged misconduct at trial, the issue of prosecutorial misconduct is waived unless the misconduct was "so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." Stenson, 132 Wash.2d at 719, 940 P.2d 1239 (citing State v. Gentry, 125 Wash.2d 570, 596, 888 P.2d 1105 (1995)).
¶ 29 From the record, it is unclear whether the prosecuting attorney even intended a "golden rule" argument.[5] The prosecuting attorney made his remarks in the context of attempting to prove in closing argument that he had met his burden on the element of "substantial bodily harm" for the crime of assault of a child in the second degree. 8RP at 1053-54. We are not convinced that the prosecuting attorney's following reference to "think of . . . a disfigurement of your face" was "so flagrant and ill-intentioned" that it "evinces an enduring and resulting prejudice." 8RP at 1054; Stenson, 132 Wash.2d at 719, 940 P.2d 1239. As a result, we hold that the prosecuting attorney did not engage in misconduct warranting a new trial.

*477 IV. CONCLUSION
¶ 30 We hold that an exceptional minimum sentence imposed under RCW 9.94A.712 does not violate the Sixth Amendment if it does not exceed the maximum sentence imposed. We also hold that the trial court did not abuse its discretion by admitting W.R.'s hearsay statements under RCW 9A.44.120. Finally, we hold that the prosecuting attorney did not commit misconduct warranting a new trial. Thus, we affirm Borboa's convictions and his exceptional minimum sentences on counts I and III. We remand for resentencing within the standard range on count II. Therefore, we reverse the Court of Appeals in part.
Concurring: C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, J.M. JOHNSON, JJ.
ALEXANDER, C.J. (concurring).
¶ 31 Although I signed Justice Sanders's dissenting opinion in the companion to this case, State v. Clarke, No. 76602-9 (May 11, 2006), I recognize that this court is now bound by the majority decision in that case. Therefore, in accordance with Clarke's holding that judicial fact finding is permissible in imposing exceptional minimum sentences under RCW 9.94A.712, I concur with the majority in this case.
SANDERS, J. (dissenting).
¶ 32 The majority concludes a judge may impose an exceptional minimum sentence on the basis of an aggravating factor neither found by the jury nor admitted by the defendant. For the reasons stated in my dissent to State v. Clarke, No. 76602-9 (Wash. May 11, 2006), I disagree.
¶ 33 The sixth amendment to the United States Constitution prohibits a judge from imposing a penalty not authorized by the facts found by the jury or admitted by the defendant. See Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 2538, 159 L.Ed.2d 403 (2004). An exceptional minimum sentence is a penalty. And under Washington law, a judge may impose an exceptional minimum sentence only if an aggravating factor exists. Consequently, a judge cannot impose an exceptional minimum sentence on the basis of an aggravating factor neither found by the jury nor admitted by the defendant.
¶ 34 I dissent.
NOTES
[1] The judgment and sentence assigns Borboa an offender score of 5 for count II and notes that the charge carries a seriousness level of IX. The judgment and sentence also states that the standard sentence range for count II with that offender score is 51 to 68 months, and the sentencing court accepted that range. However, table 1 of RCW 9.94A.510 lists the standard sentencing range for an offender score of 5 and a seriousness level of IX as 57 to 75 months. See RCW 9.94A.510 tbl. 1.
[2] RCW 9.94A.712 provides in part:

(1) An offender who is not a persistent offender shall be sentenced under this section if the offender:
(a) Is convicted of:
(i) Rape in the first degree, rape in the second degree, rape of a child in the first degree, child molestation in the first degree, rape of a child in the second degree, or indecent liberties by forcible compulsion;
(ii) Any of the following offenses with a finding of sexual motivation: Murder in the first degree, murder in the second degree, homicide by abuse, kidnapping in the first degree, kidnapping in the second degree, assault in the first degree, assault in the second degree, assault of a child in the first degree, or burglary in the first degree;
. . .
committed on or after September 1, 2001.
[3] Borboa also argues that hearsay admitted under RCW 9A.44.120 must "pass the rigorous scrutiny all hearsay is subjected to under the federal and state confrontation clauses." Pet. for Review at 11. The confrontation clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him." U.S. CONST. amend VI. Washington Constitution article I, section 22 similarly provides that "in criminal prosecutions the accused shall have the right ... to meet the witnesses against him face to face." In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court distinguished between testimonial and nontestimonial evidence and held that "[w]here testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68, 124 S.Ct. 1354. However, the Court observed that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law." Id.

Borboa did not brief the issue of whether W.R.'s statements constituted testimonial evidence, but his counsel conceded at oral argument that W.R.'s statements were not testimonial. State v. Borboa, No. 76547-2, oral argument, (Wash. Oct. 18, 2005). In State v. Shafer, 156 Wash.2d 381, 391, 128 P.3d 87 (2006), this court held that a child's spontaneous statements to her mother were not testimonial and that the child's statements were admissible "if there is compliance with RCW 9A.44.120 and the [State v.] Ryan reliability factors." Thus, we need only consider whether W.R.'s statements were admissible under RCW 9A.44.120 and the reliability factors laid out in State v. Ryan, 103 Wash.2d 165, 691 P.2d 197 (1984).
[4] A "golden rule" argument is an argument that "`urg[es] the jurors to place themselves in the position of one of the parties to the litigation, or to grant a party the recovery they would wish themselves if they were in the same position'" and is improper. Adkins v. Aluminum Co. of Am., 110 Wash.2d 128, 139, 750 P.2d 1257, 756 P.2d 142 (1988) (quoting Jacob A. Stein, Closing Argument § 60, at 159 (1985)).
[5] Additionally, we are not convinced that the prohibition on "golden rule" arguments applies in the criminal context and none of the cases cited by Borboa support that proposition. See United States v. Gaspard, 744 F.2d 438 (5th Cir. 1984) (prosecuting attorney's statement that the jury was a victim was not plain error); State v. Sowards, 147 Ariz. 185, 192, 709 P.2d 542 (1984) (prosecuting attorney's statement to place "oneself in the role of the victims" was "harmless in view of the overwhelming proof of guilt"). The third case cited by Borboa, People v. Fields, discusses only improper "appeals to the sympathy or passions of the jury," which is likely the more appropriate argument in the criminal context. 35 Cal.3d 329, 362, 197 Cal.Rptr. 803, 673 P.2d 680 (1983). Regardless of the proper way to frame the argument, we are not convinced that the prosecuting attorney's statement constituted misconduct that resulted in enduring prejudice.