IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35458-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VIATER TWIRINGIYIMANA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Viater Twiringiyimana appeals his conviction of one count of first degree child molestation, challenging (1) the trial court's ruling that out-of-court statements by the child victim were reliable and admissible, (2) an asserted "comment on the evidence" by the trial court in admitting evidence of the child victim's out-of-court statements, and (3) the sufficiency of the evidence. We find no error or abuse of discretion and that sufficient evidence supported the jury's verdict. We affirm.

OVERVIEW OF FACTS AND PROCEDURE

In March 2013, Arwa Al-Naqash and her then 7-year-old-daughter D.A.M. immigrated to the United States from Jordan as refugees. They arrived in Spokane, where Ms. Al-Naqash obtained work as a housekeeper at the Davenport Hotel. There she met the defendant, Viater Twiringiyimana, who was also an employee of the hotel. They

struck up a relationship and Ms. Al-Naqash and D.A.M. moved in with Mr. Twiringiyimana in mid-June 2013. She and D.A.M. remained living with Mr. Twiringiyimana for two months, until their relationship deteriorated. During the two months they lived together, Ms. Al-Naqash and Mr. Twiringiyimana worked different hours, and Mr. Twiringiyimana would watch D.A.M. on the five days a week that Ms. Al-Naqash worked at the hotel from roughly 3:00 p.m. to 11:00 p.m.

By November 2013, Ms. Al-Naqash and D.A.M. had lived away from Mr. Twiringiyimana for several months and had recently moved in with William Burke, who Ms. Al-Naqash would later marry. One morning in November 2013, D.A.M. approached her mother and, according to Ms. Al-Naqash, said she wanted to tell her mother something but first asked if they were in a safe place living with Mr. Burke. After being assured that they were, D.A.M. told her mother that Mr. Twiringiyimana had kissed her, told her to take off her pantie, and had asked her to touch his penis. The mother reported this to law enforcement, and D.A.M. repeated the allegations of molestation to a forensic interviewer, Karen Winston, in a videotaped interview.

When Mr. Twiringiyimana was interviewed by police, he strongly denied D.A.M.'s allegations. The State nonetheless charged him in November 2014 with three counts of first degree child molestation.

A pretrial hearing was conducted on whether the trial court would admit D.A.M.'s out-of-court statements to her mother and Ms. Winston. Three witnesses were called: D.A.M.'s mother, who by then went by her married name, Burke; D.A.M., who was almost 11 years old at the time of the hearing; and Ms. Winston. Ms. Winston's videotaped interview of D.A.M. was also admitted in evidence. Following the hearing, the court announced in a letter ruling that the statements would be admitted. It later entering formal findings and conclusions.

Following a jury trial, Mr. Twiringiyimana was found guilty of one count of first degree child molestation and was acquitted of the other two counts. The court imposed a low-end sentence of 51 months.

Most of Mr. Twiringiyimana's assignments of error are to the pretrial decision to admit D.A.M.'s out-of-court statements to her mother and Ms. Winston. Because those assignments of error are based on a different record than the errors assigned to the outcome of trial, we provide a two-part analysis, providing further factual detail as needed.

## ANALYSIS

### Pretrial ruling on the admissibility of D.A.M.'s out-of-court statements

RCW 9A.44.120 provides, as relevant here, that an otherwise-inadmissible statement by a child under the age of 10 that describes an act of sexual contact performed with or on the child is admissible as evidence in a criminal proceeding if:

> (1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
> (2) The child either:
> (a) Testifies at the proceedings; or
> (b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

This child hearsay statute, which was adopted in 1982, was reviewed by the Washington Supreme Court in *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984). At the time, the reliability that the statute required was a matter of constitutional concern under the confrontation clause of the Sixth Amendment to the United States Constitution. *Id.* at 170 (citing *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980)). Drawing from *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982) and *Dutton v. Evans*, 400 U.S. 74, 88-89, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970), the *Ryan* court identified nine factors that applied in determining the reliability of out-of-court statements. *Ryan*, 103 Wn.2d at 175-76. As restated by this court in *State v. Kennealy*, the nine factors considered are:

> (1) [W]hether there is an apparent motive to lie, (2) the general character of the declarant, (3) whether more than one person heard the statements, (4) the spontaneity of the statements, (5) the timing of the declaration and the relationship between the declarant and the witness, (6) whether the

> statement contained express assertions of past fact, (7) whether the declarant's lack of knowledge could be established through cross-examination, (8) the remoteness of the possibility of the declarant's recollection being faulty, and (9) whether the surrounding circumstances suggested the declarant misrepresented the defendant's involvement.

151 Wn. App. 861, 880, 214 P.2d 200 (2009) (footnote omitted) (citing *Ryan*, 103 Wn.2d at 175-76). Reliability is determined based on an overall evaluation of these factors. *Id.* at 881. Accordingly, it is not the case that "*each factor* must be 'substantially me[t] before a statement is demonstrated to be reliable'" as argued by Mr. Twiringiyimana.[1] It is only required that the factors, collectively, must be substantially met.[2] *Id.*, *cf. State v. Griffith*, 45 Wn. App. 728, 738-39, 727 P.2d 247 (1986) (holding that the first five factors, based on *Parris*, must be collectively met, as must the remaining set of four factors, based on *Dutton*).

The United States Supreme Court's 2004 decision in *Crawford v. Washington* altered the confrontation clause analysis, holding that the reliability of a statement is immaterial. 541 U.S. 36, 61, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) ("Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous

---

[1] Am. Br. of Appellant at 28 (emphasis added).

[2] Indeed, this court has observed that factors seven, eight, and nine have been disapproved of by the United States Supreme Court and the sixth factor is "of little use" when applying RCW 9A.44.120. *State v. Karpenski*, 94 Wn. App. 80, 109-11 n.125-128, 971 P.2d 553 (1999), *overruled on other grounds by State v. C.J.*, 148 Wn.2d 672, 63 P.3d 765 (2003).

notions of 'reliability.'"). While a finding of reliability remains a statutory requirement for admissibility, then—and while *Ryan* continues to dictate the controlling considerations—the reliability determination no longer presents an issue of constitutional magnitude.

We review a trial court's admission of child hearsay statements for abuse of discretion. *State v. Borboa*, 157 Wn.2d 108, 121, 135 P.3d 469 (2006). A trial court abuses its discretion only when its decision is manifestly unreasonable or is based on untenable reasons or grounds. *State v. C.J.*, 148 Wn.2d 672, 686, 63 P.3d 765 (2003).

Mr. Twiringiyimana argues that eight of the nine *Ryan* factors weighed against the reliability of D.A.M.'s out-of-court statements and the trial court therefore abused its discretion when it admitted them. We address his challenges to the eight factors in turn.

*Factor One: Whether there is an apparent motive to lie*

Mr. Twiringiyimana assigns error to the trial court's 10th finding of fact, which states:

> DAM had no[ ] motive to lie about the alleged abuse. Prior to raising these allegations, DAM told her mother she liked the defendant.

Clerk's Papers (CP) at 149; *see* Assignment of Error 3, Am. Br. of Appellant at 1-2. When asked at the pretrial hearing how D.A.M. got along with Mr. Twiringiyimana when they first moved in with him, Ms. Burke testified that D.A.M. thought he was nice, and

their relationship was fine.  D.A.M. testified at the pretrial hearing that she was not trying

to get Mr. Twiringiyimana in trouble when she reported the abuse to her mother.

Mr. Twiringiyimana argues D.A.M. had a motive to lie because D.A.M. and her

mother had no daily sense of stability or certainty until they moved in with him and that

D.A.M. was aware of the animosity between him and her mother, was upset that he made

her follow house rules, and wanted to get her mother's attention.  He provides no citation

to the record for these contentions.

In the section of his statement of the case addressing the child hearsay

proceedings, Mr. Twiringiyimana cites to Ms. Burke's testimony that he told her D.A.M.

misbehaved in his care.  He also cites to Ms. Burke's testimony that D.A.M. complained

that Mr. Twiringiyimana made her go to bed early and made too much noise with his

friends when she was trying to sleep.

The only testimony directly addressing whether D.A.M. had a motive to lie

offered during the child hearsay hearing was D.A.M.'s answer to the question, "Were you

trying to get Vi in trouble?"  Report of Proceedings (RP) (Sept. 2, 2016) at 70.  She

answered:

> No.  I was just trying to just tell what happened, because I kind of felt like
> if I wasn't going to get that off my chest, I was always going to remember
> it and hold it in as a bad dark memory.

*Id.* at 70-71.

7

"The abuse of discretion standard, as applied in child hearsay cases . . . acknowledges the obvious, that the trial court is the only court that sees the children and listens to them and to the other witnesses in such a case." *State v. Swan*, 114 Wn.2d 613, 667, 790 P.2d 610 (1990). Appellate courts review a trial court's inferences and conclusions in such cases, "'but not its findings as to credibility or the weight to be given evidence.'" *Id.* at 666 (quoting *In re Pers. Restraint of Bugai*, 35 Wn. App. 761, 765, 669 P.2d 903 (1983)).

The trial court credited the testimony of D.A.M. and her mother, which support the trial court's finding that this factor weighed in favor of reliability.

*Factor Two: The general character of the declarant*

Mr. Twiringiyimana assigns error to the trial court's 11th finding of fact, which states:

> According to DAM's mother, and uncontested by the defendant, DAM is an honest child.

CP at 149; *see* Assignment of Error 4, Am. Br. of Appellant at 2. Ms. Burke was asked during the hearing whether D.A.M. was a child who would normally lie or tell the truth. She answered:

> Normally she doesn't lie because most of the time I tell her there's a problem, tell me, I will not punish you if you tell the truth, but if you hide from me, then I find out, yeah, I'll not be happy about that. So plus—and I show it to her many times when she tells the truth, I—I make—like, even if there's punishment, I make it less or I remove it so to encourage her to tell me the truth, not hiding anything.

8

RP (Sept. 2, 2016) at 36.  As the trial court observed, D.A.M.'s mother was "probably best suited to make such an assessment" and "[n]o evidence was presented to the contrary."  CP at 279.  The court reasonably found this factor to weigh in favor of reliability.

*Factor Three: Whether more than one person heard the statements*

Mr. Twiringiyimana argues the third factor weighs against a finding that D.A.M.'s statements to her mother were reliable, because they took place when the two were alone.

The trial court construes the third factor as this court has: that reliability is enhanced when more than one person has heard the victim's report, whether or not they heard it at the same time.  In *State v. Bailey*, 52 Wn. App. 42, 757 P.2d 541 (1988), *aff'd*, 114 Wn.2d 340, 787 P.2d 1378 (1990), the victim reported abuse to her mother, who notified police, and the victim later made the same report to a police social worker.  The third factor was deemed present, because "the statements were heard by at least three people at different times." *Id.* at 49.  The court reasonably found this factor to weigh in favor of reliability.

*Factor Four: The spontaneity of the statements*

Mr. Twiringiyimana assigns error to the trial court's 13th finding of fact, which states:

> DAM's statements to her mother were spontaneous and unsolicited and her statements to Karen Winston were elicited with open-ended questions,

allowing DAM the opportunity to provide the information in her own
words.

CP at 149; *see* Assignment of Error 5, Am. Br. of Appellant at 2. Elsewhere, the court

found that "DAM made these statements to her mother of her own accord, without

prompting." *Id.* (Finding of Fact (FF) 7).

Mr. Twiringiyimana argues that D.A.M.'s statements to her mother were not

spontaneous because they were made four months after the alleged abuse. But

"spontaneous" does not mean "prompt." It means, e.g., "proceeding from natural feeling

or native tendency without external constraint **:** VOLUNTARY <~ expression of affection

and gratitude>." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2204 (1993).

Ms. Burke testified that D.A.M. approached her and reported the abuse without any

questioning or prompting.

Mr. Twiringiyimana argues that D.A.M.'s statements to Ms. Winston during the

forensic interview were in response to leading questions and thus not spontaneous. He

relies for his challenge on the following questions and responses:

| | |
|---|---|
| KAREN WINSTON: | So did you, um, ever tell your mom that you had a touching problem? |
| [D.A.M.]: | How did you know that? |
| KAREN WINSTON: | Did that happen? |
| [D.A.M.]: | Yeah. |
| KAREN WINSTON: | Who did the touching? |
| [D.A.M.]: | He did. |

10

| KAREN WINSTON: | Who's, who's he? |
|---|---|
| [D.A.M.]: | V. |
| KAREN WINSTON: | V.  Who did he touch? |
| [D.A.M.]: | Me. |
| KAREN WINSTON: | Um, tell me about that. |
| [D.A.M.]: | I don't really like to talk about that. |
| KAREN WINSTON: | You don't really like to talk about it.  What did V touch you with? |
| [D.A.M.]: | I don't really like to talk about (INAUDIBLE). |
| KAREN WINSTON: | Mmm hmm.  What did he touch you with? |
| [D.A.M.]: | His hand. |
| KAREN WINSTON: | His hand.  Where did he touch you when he touched you with his hand? |
| [D.A.M.]: | Can I not please talk about that? |
| KAREN WINSTON: | Oh, I think we need to talk that [sic]. |
| [D.A.M.]: | No. |
| KAREN WINSTON: | What's the part called where you touched? |
| [D.A.M.]: | Well, it was here. |
| KAREN WINSTON: | Uh, huh. |
| [D.A.M.]: | That's all. |
| KAREN WINSTON: | What's that part called? |
| [D.A.M.]: | My, over here? |
| KAREN WINSTON: | Yes, what's it called? |
| [D.A.M.]: | I don't know. |
| KAREN WINSTON: | If like, if we looked at a picture, do you think that would help? |
| [D.A.M.]: | Yeah. |

CP at 230-31. The State responds that D.A.M.'s statements "were not made in response to overly leading questions" and that by reviewing the videotape, the trial court could satisfy itself that D.A.M.'s statements "do not appear rehearsed." Br. of Resp't at 16.

In *Swan*, our Supreme Court approved of this court's reasoning in *State v. Madison*, 53 Wn. App. 754, 770 P.2d 662 (1989) that just because information provided by a child is in response to an adult's questions, including questions that might sometimes be leading, it does not follow that the information is insufficiently spontaneous. *Swan*, 114 Wn.2d at 649-50. It is relevant that details of events and the defendant's identity are not suggested by the questioner, but are volunteered by the child. It is relevant that the interviewer strives to avoid leading questions and when required to lead, does so in the most nonsuggestive way possible. The trial court could reasonably find that this was true of Ms. Winston's questioning. Evidence at the pretrial hearing supports the trial court's finding that D.A.M.'s statements were sufficiently spontaneous to weigh in favor of reliability.

> *Factor Five: The timing of the declaration and the relationship between the declarant and the witness*

Mr. Twiringiyimana assigns error to the trial court's 14th finding of fact, which states:

> The manner and timing of DAM's disclosures—along with the fact that she disclosed to her mother, whom she trusted—weigh in favor of reliability.

CP at 149; *see* Assignment of Error 6, Am. Br. of Appellant at 3. Elsewhere, the court found that "DAM made these statements to her mother . . . at a time where she felt safe to disclose the abuse" and, "[o]nce they were out of the apartment and living in another location," after "ask[ing] her mother words to the effect of 'Are we safe now?'" CP at 149 (FF 6, 7).

Mr. Twiringiyimana argues that D.A.M.'s statements to her mother and Ms. Winston were inherently suspect because they were made roughly four months after the alleged abuse. The trial court reasonably found that because the timing was understandable and D.A.M.'s report was not unduly delayed, this factor weighs in favor of reliability.

> *Factor Seven: Whether the declarant's lack of knowledge could be established through cross-examination*

Mr. Twiringiyimana's argument as to the seventh factor is not clear. In the trial court, he conceded that "[c]ross-examination of the alleged victim in most cases can show the declarant's lack of knowledge, and this case is no different." CP at 130.

On appeal, he appears to fault the State for failing to demonstrate that he would be able, through cross-examination at trial, to establish that D.A.M. had a knowledge of sexual matters unrelated to any sexual abuse by him. He makes an equally unclear argument based on a drawing admitted at trial, but since the drawing was not in evidence during the pretrial hearing, we need not address it.

13

The trial court better understood the relevance of the seventh factor and why it weighed in favor of admissibility. It found that "[b]ecause DAM is expected to testify at trial, defense counsel will have an opportunity to cross-examine her and thus there will be an opportunity to expose any fabrication or lack of knowledge." CP at 149 (FF 16). Mr. Twiringiyimana presented no evidence or argument of circumstances that would limit his opportunity or ability to cross-examine D.A.M. at trial.

*Factor Eight: The remoteness of the possibility of the declarant's recollection being faulty*

Mr. Twiringiyimana assigns error to the trial court's 17th finding of fact, which states:

> The likelihood that DAM's recollections are faulty is minimized by the fact that she made the disclosures to her mother as soon as she was away from the perceived danger and felt safe to reveal what allegedly was happening to her. The statements to Ms. Winston were similarly made within a short time of the initial disclosure.

CP at 150; *see* Assignment of Error 7, Am. Br. of Appellant at 3. Mr. Twiringiyimana argues conclusorily that the four month lapse before D.A.M. reported abuse to her mother "weigh[s] heavily" in support of her having a faulty recollection. *Id.* at 31. He fails to cite to any evidence from the pretrial hearing that D.A.M. would have a faulty recollection of events taking place only four months earlier—particularly unusual and distressing events. The trial court reasonably attributed little weight to the risk that D.A.M.'s recollection was faulty.

14

Mr. Twiringiyimana also argues that inconsistencies in the statements D.A.M. made to her mother, to Ms. Winston, and at the child hearsay hearing, demonstrate that her recollection was faulty. But the three allegedly "flagrant" inconsistencies he cites are all from trial testimony, not the pretrial hearing. *See* Am. Br. of Appellant at 31; Reply Br. at 7 (in each case citing RP (Trial) at 430-32, 435, 455-57). The asserted inconsistencies at trial had to do with every part of her body that Mr. Twiringiyimana tried to touch or grab, whether she told him to stop, and whether—when he touched or tried to touch her—she ever tried to pinch, slap, bite, or ask him to open the door so she could leave. *See* RP (Trial) at 455-57. Asked at trial why she had not told Ms. Winston these things, she answered, "The questions you asked me and the questions she asked me were different, so I really didn't know what details she wanted." RP (Trial) at 457.

The inconsistencies are not "flagrant." Most importantly, Mr. Twiringiyimana does not demonstrate nor do we find that D.A.M. testified inconsistently on these matters at the pretrial hearing. Because the trial court's finding is supported by substantial evidence from the pretrial hearing, it reasonably found this factor to weigh in favor of reliability.

> *Factor Nine: Whether the surrounding circumstances suggested the declarant misrepresented the defendant's involvement*

Mr. Twiringiyimana assigns error to the trial court's 18th finding of fact, which states:

>   Given the totality of the circumstances, it is unlikely DAM is
>   misrepresenting the defendant's involvement because she was able to
>   provide testimony in court more than three years after the alleged abuse.

CP at 150; *see* Assignment of Error 8, Am. Br. of Appellant at 4.

Mr. Twiringiyimana points to the fact that there was no physical evidence or eyewitness testimony to corroborate D.A.M.'s report of molestation. The absence of eyewitnesses to child molestation is unsurprising and physical evidence will ordinarily not be available when a child witness does not make a prompt report. As previously observed, we defer to the trial court's determinations of credibility. Given the trial court's determination that D.A.M. was credible, it reasonably found this factor to weigh in favor of reliability.

The trial court considered each of the *Ryan* factors, found all to weigh in favor of reliability, and identified the evidence and inferences that supported its findings. No abuse of discretion is shown.

## Trial issues

*Comment on the evidence.* Mr. Twiringiyimana makes two trial-related assignments of error. His first is that the court "erred when allowing the [State] to present at trial the additional, needlessly cumulative and redundant testimonies of other witnesses regarding the alleged incident of sexual misconduct"—those witnesses being D.A.M.'s mother and Ms. Winston. Am. Br. of Appellant at 5-6. He did not object to the

16

witnesses' testimony at trial on grounds it was cumulative and prejudicial, but casts the alleged error now as an "impermissible and tacit comment on the evidence" that can be raised for the first time on appeal. *Id.* at 7, 33. Article IV, section 16 of the Washington Constitution provides that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." A challenge to a court's comment on the evidence is a manifest constitutional error that can be raised for the first time on appeal. RAP 2.5(a)(3); *State v. Levy*, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006).

The admission of the witnesses' testimony about D.A.M.'s out-of-court statements was not a comment on the evidence. The statements *were* the evidence. The admission of evidence, standing alone, cannot be considered an unconstitutional comment on the evidence. *State v. Gentry*, 125 Wn.2d 570, 638-39, 888 P.2d 1105 (1995).

*Sufficiency of the evidence.* Mr. Twiringiyimana's remaining argument is that the evidence is insufficient to support his conviction for first degree molestation.

A defendant's challenge to the sufficiency of the evidence requires us to view the evidence in the light most favorable to the State and determine "whether any rational trier of fact could have found the elements of the charged crime beyond a reasonable doubt." *State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Substantial

evidence means evidence in the record of a sufficient quantity to persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

"A person is guilty of child molestation in the first degree when the person has . . . sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). The State presented evidence that D.A.M. was 7 years old in the summer of 2013, and that at the time of the 2017 trial, Mr. Twiringiyimana was 26. D.A.M. testified at trial that she went into Mr. Twiringiyimana's room to kiss him goodnight and he grabbed her and told her to stay. She testified that when she stayed, he grabbed her bottom and thighs. D.A.M. testified that he grabbed her hand and placed it on his penis. The evidence was sufficient.

Mr. Twiringiyimana also argues that because the jury found him not guilty on two counts of child molestation, it must have not believed D.A.M.'s testimony. In the videotaped interview that was played for the jury, D.A.M. told Ms. Winston that Mr. Twiringiyimana had her touch his private part, "Probably about three times." CP at 238. When asked at trial how many times Mr. Twiringiyimana had engaged in the objectionable activity, she answered, "More than one time," but that she "[didn't] remember" how many. RP (Trial) at 431. Sufficient evidence supported the jury's

18

verdict that the State had proved one act of first degree molestation beyond a reasonable

doubt.  We will not disturb its credibility determination.  *State v. Emery*, 161 Wn. App.

172, 199, 253 P.3d 413 (2011).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Korsmo, J.