# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59418-8-II |
| Respondent, | |
| v. | |
| | UNPUBLISHED OPINION |
| CHAREESE CHAMPALE NEAL, | |
| Appellant. | |

PRICE, J. — Chareese C. Neal was on trial for assaulting her seven-year-old son, J.G. During deliberations, the jury sent a note to the trial court, indicating that it was at an impasse and having difficulty reaching a unanimous verdict. The note also revealed that the jury's preliminary vote was 11-1 in favor of convicting. The trial court encouraged the jury to continue deliberating.

Neal moved for a mistrial, contending that the trial court's response to the note exerted coercive pressure on the deliberations. The trial court denied the motion, and Neal was eventually convicted. Neal appeals.

We affirm.

### FACTS

#### I. BACKGROUND

In August 2022, J.G.'s father observed bruises on J.G.'s back, legs, and bottom. J.G.'s father asked about the bruises, and J.G. said that Neal had "spanked" him. 1 Verbatim Rep. of Proc. (VRP) at 100. J.G.'s father took photos of the bruises and notified school officials and Child

Protective Services (CPS). CPS, in turn, notified law enforcement. Law enforcement's investigation involved a forensic interview with J.G. During the interview, J.G. described being abused by Neal. Following its investigation, the State charged Neal with third degree assault of a child.

Neal's jury trial involved three days of testimony. J.G., J.G.'s father, a law enforcement officer, a forensic interviewer, and a former CPS employee testified consistently with the facts set forth above.

J.G. testified that Neal "spanked" him with a belt about three times on his bottom and his back. 1 VRP at 77. J.G. described the pain as, "Pretty bad" and said he had bruising as a result of the spanking. 1 VRP at 79.

A pediatric nurse practitioner also testified and explained that photos of J.G.'s bruising on his bottom were consistent with being hit with a belt that was folded in half.

Neal testified and denied abusing J.G. Neal admitted that she spanked J.G., but testified that she used her hand and not a belt. Neal also said that she did not spank J.G. in anger; she explained that with respect to parental discipline, she had completed parenting classes and worked with youth in the community.

Following the testimony, the trial court instructed the jury. The trial court gave jury instruction 12, which told the jury they had a duty to "deliberate in an effort to reach a unanimous verdict." Clerk's Papers (CP) at 30. But the instruction also said:

> You should not, however, surrender your honest belief about the value or significance of evidence solely because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of reaching a verdict.

2

CP at 30. Another instruction, instruction 13, explained to the jury the procedure for asking a question during the deliberations and expressly told the jury that it should not disclose the results of any preliminary vote.

## II. JURY QUESTION AND NEAL'S MISTRIAL MOTION

After only a few hours of deliberations, the jury submitted a question to the trial court, which stated,

> We have had a vigorous debate and believe we are at an impass[e] and will not reach a unanimous decision. What should we do? We do not believe more time (today or tomorrow will change). (We are 11 to 1 guilty).

CP at 15.

The trial court gathered the parties outside the presence of the jury and discussed the question. The trial court first questioned whether the jury had read its instructions because jury instruction 13 explicitly told the jury not to reveal its vote when asking a question. The trial court then asked the parties about how to move forward.

The State argued that the trial court should respond by instructing the jury to continue deliberating because deliberations had only just started. Neal, however, moved for a mistrial, arguing that the jury had declared it was at an impasse, so giving the jury additional time to deliberate was futile.

The trial court delayed ruling on Neal's motion; it asked that the parties research the law on the issue and return in approximately one hour to argue the motion. In the interim, the trial court gave the following written response to the jury, "Please Continue Your Efforts to Deliberate." CP at 15 (some capitalization omitted).

3

Shortly after receiving the trial court's response, the jury notified the trial court that it had reached a verdict. When the parties reconvened (and before the trial court took the verdict), the trial court requested that the parties discuss the results of their research for the mistrial motion.

The State argued there was no basis for a mistrial. The State explained that although the trial court is prohibited from coercing jurors in making their decision on the verdict, nothing the trial court did amounted to coercion. Neal disagreed and made two arguments. First, she argued that the jury showed that it could not follow instructions when it disclosed the results of the preliminary vote. Second, because the vote was revealed to be 11-1, Neal argued that the trial court created an environment that pressured the holdout juror to change their decision. Instructing the jury to continue deliberating under these circumstances was "tantamount" to coercion. 5 VRP at 329.

The trial court denied the motion for a mistrial, explaining that its response to the jury was a neutral statement that did not amount to coercion. But the trial court also explained that its decision was without prejudice and that Neal could request further relief after the verdict, such as requesting a new trial.

III. VERDICT, SENTENCING, AND APPEAL

The jury then entered the courtroom and announced a verdict of guilty as charged. The trial court polled each juror individually, and each confirmed that they agreed with the verdict.

After the jury was discharged, the trial court discussed with the parties the possibility of a motion for a new trial from Neal. Neal's counsel responded that they would have to "consult with [their] supervisor" before deciding to bring such a motion. 5 VRP at 341. No motion for a new trial was ever made.

4

At sentencing, the trial court imposed 12 months of community custody, parenting classes, anger management, and domestic violence evaluations pursuant to the first-time offender statute.

Neal appeals.

## ANALYSIS

Neal argues that the trial court abused its discretion in denying her motion for a mistrial. We disagree.

## I. LEGAL PRINCIPLES

We review the trial court's denial of a mistrial motion for an abuse of discretion. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). A trial court abuses discretion if its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *State v. Borboa*, 157 Wn.2d 108, 121, 135 P.3d 469 (2006).

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to a fair trial by an impartial jury. *State v. Guevara Diaz*, 11 Wn. App. 2d 843, 854-55, 456 P.3d 869, *review denied*, 195 Wn.2d 1025 (2020). This right to an impartial jury prohibits the trial court from placing coercive pressure on the jury's deliberations. *State v. Boogaard*, 90 Wn.2d 733, 736-37, 585 P.2d 789 (1978).

The criminal rules also place certain restrictions on how the trial court may interact with the jury while it is deliberating. *See* CrR 6.15(f)(2). The purpose is to prevent judicial interference in the jury's deliberative process. *Boogaard*, 90 Wn.2d at 736. CrR 6.15(f)(2) provides, "After jury deliberations have begun, the court shall not instruct the jury in such a way as to suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required

to deliberate." A trial court also violates a defendant's right to an impartial jury if it issues "an instruction which suggests that a juror who disagrees with the majority should abandon [their] conscientiously held opinion for the sake of reaching a verdict . . . ." *Boogaard*, 90 Wn.2d at 736.

To prevail on a claim of coercion in violation of these requirements, a defendant must show that there is a "reasonably substantial possibility" that the trial court improperly influenced the verdict. *State v. Watkins*, 99 Wn.2d 166, 178, 660 P.2d 1117 (1983). Mere "speculation about how the trial court's intervention might have influenced the jury's verdict" is insufficient. *Id.* at 177-78.

II. APPLICATION

Neal argues that the trial court's instruction to the jury to " 'Please Continue Your Efforts to Deliberate' " improperly influenced the verdict because there was only one holdout juror and the jury reached its verdict very shortly thereafter. Br. of Appellant at 14 (quoting CP at 15) (some capitalization omitted). Neal contends that the trial court should have inquired into the state of the deadlock before merely telling them to continue their deliberations. According to Neal, this failure to inquire into the state of the jury's deadlock "no doubt communicated to the jurors that they were expected to reach a verdict, no matter what." *Id.* at 22. This, Neal argues, could have improperly coerced the holdout juror to change their vote to find Neal guilty.[1]

---

[1] The State responds, in part, with a short argument that Neal "waived" her assignment of error when she failed to seek a new trial after the verdict. Br. of Resp't at 9-10. Neal disagrees, arguing that the issue was adequately preserved by her motion for a mistrial and that a subsequent motion for a new trial was unnecessary. Because the State cites no authority that a defendant must file a motion for a new trial to preserve this type of issue and because the record is adequately developed below for our review of this issue, we address the merits.

Neal generally supports her argument, in part, with a citation to our Supreme Court's decision in *Boogaard*, 90 Wn.2d at 736. There, the trial court asked the presiding juror, in the jury's presence, about the history of the vote during deliberations and how long the vote had "stood at each division." *Id.* at 735. The trial court then asked each juror whether they believed that they could reach a verdict in 30 minutes. *Id.* All but one of the jurors responded that they believed they could reach a verdict within that timeframe. *Id.* The trial court subsequently instructed the jury to return to the jury room and continue deliberating. *Id.* Thirty minutes later, the jury reached a verdict. *Id.* From these facts, our Supreme Court held that the trial court's questioning of the individual jurors likely influenced holdout jurors to vote with the majority. *Id.* at 740. The trial court's questioning tended to suggest to holdout jurors that they should capitulate to the majority for the sake of reaching a verdict within 30 minutes. *See id.*

*Boogaard*, as an example of how coercion can occur, illustrates why Neal's arguments are unpersuasive in this case. Here, when notified by the jury that a unanimous verdict might not be possible and that the jury's preliminary vote was 11 to 1 guilty, the trial court responded with the simple statement, "Please Continue Your Efforts to Deliberate." CP at 15 (some capitalization omitted). Unlike the trial court in *Boogaard*, there was no probing for facts behind the vote or attempts to secure commitments from the jurors about an expected timeframe. 90 Wn.2d at 735. Nothing about this neutral statement approached anything remotely resembling coercive pressure on a holdout juror to abandon their opinion for the sake of reaching a verdict.

Nor did the trial court's response violate CrR 6.15(f)(2). Nothing was said about any constraints on the length of time that the jury would be required to deliberate or suggest any consequences of failing to reach a unanimous verdict.

Still, Neal suggests that, rather than just encouraging further deliberation, the trial court should have reminded the jury about the unanimity instruction (instruction 12), which, she asserts, outlined the "proper way" for the jury to achieve unanimity and reinforced "the importance of every individual juror's fidelity to [their] honest belief about the evidence." Br. of Appellant at 21-22. The consequences of the trial court's failure can be seen, according to Neal, from the jury's quick verdict—the speed with which the jury reached a verdict is a strong indication of the coercion. But drawing any conclusions from the quick verdict is mere speculation. And, as discussed above, "speculation" is insufficient to establish coercion. *See Watkins*, 99 Wn.2d at 177-78.

We find nothing in the trial court's response of "Please Continue Your Efforts to Deliberate," or the circumstances of it being given, establishes a reasonably substantial possibility that the jury's verdict was improperly influenced or coerced. CP at 15 (some capitalization omitted). Thus, we hold that the trial court did not abuse its discretion in denying Neal's motion for a mistrial.

No. 59418-8-II

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, C.J.

J.

9